Kyriaki Cleo KYRIAZI, Plaintiff,

v.

WESTERN ELECTRIC CO. et al., Defendants.

Civ. A. No. 475–73.

United States District Court, D. New Jersey.

May 2, 1979.

Vladeck, Elias, Vladeck & Englehard by Judith P. Vladeck, and Margaret M. Young, New York City, for plaintiff.

Pitney, Hardin & Kipp by Edward P. Lynch, S. Joseph Fortunato, Barry A. Guryan, and Claire B. Dubin, Morristown, N.J., for defendants.

OPINION

STERN, District Judge.

Stage I of this class action brought under Title VII, 42 U.S.C. § 2000e et seq., resulted in a finding by this Court that Western Electric discriminated against female applicants, former employees and present employees at its Kearny plant. See Kyriazi v. Western Electric Co., 461 F.Supp. 894 (D.N. J.1978). State II proceedings were commenced immediately thereafter. See Kyriazi v. Western Electric Co., 465 F.Supp. 1141 (D.N.J.1979). Special Masters were appointed to preside over the hearings of some 1,700 class members who have elected to pursue their Title VII remedies each of

whom Western requires be given individualized damage remedies. The question presented at this juncture of State II is whether Western may withhold the wages of employees who must take time from work to participate in State II proceedings as class members, or as witnesses *for* class members, while at the same time compensating its supervisors who testify at these proceedings on Western's behalf *against* a class member. We conclude that this practice violates the spirit, if not the letter, of Title VII.

Title VII makes it unlawful for an employer to retaliate against an employee who pursues his Title VII rights:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has . . . testified, assisted or participated in any manner in . . [a] proceeding or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). While three courts have held that wages lost by class members during their participation in State I Title VII proceedings are not recoverable as *costs* under Rule 54(d), *see, Carreathers v. Alexander,* 587 F.2d 1046, 1052 (10th Cir. 1978); *Bowe v. Colgate-Palmolive Co.,* 272 F.Supp. 332 (S.D.Ind.1967), *aff'd in part, rev'd in part,* 416 F.2d 711 (7th Cir. 1969); *Barth v. Bayou Candy Co., Inc.,* 379 F.Supp. 1201 (E.D.La.1974), none of these cases considers the application of § 2000e–3(a). Moreover, none of these cases involves a State II proceeding after a finding of liability in favor of the class, nor do they indicate whether the employer paid wages to those employees who testified on the employer's behalf.

Western, during a colloquy with the Court, argued that its conduct does not amount to retaliation within the meaning of § 2000e–3(a):

> MR. LYNCH: I think there has to be an intention to retaliate. There has to be an obvious link between whatever the retaliation is and the filing of the claim. I think that requires some intent, your Honor.

      *    *    *    *    *    *

> THE COURT: . . . Let's take somebody who is not, as you call it, a claimant, and who is, instead, a Supervisor. Suppose the Supervisor is called by the woman and the Supervisor says, "Yes, I know this lady was discriminated against. I was told by my boss, Don't give her the job, because she's a woman."
>
> That is all hypothetical, of course . . . But I'm trying to do it for the sake of the discussion.
>
> Under those circumstances may Western say, "You may come and testify only if you do it on your own time, but the Supervisor who testifies that there wasn't such discretion, we'll pay him to come?"

    *    *    *    *    *    *

> THE COURT: . . .
>
> In other words, a witness is called, but instead of being called by Western, for Western, is called by a claimant for a claimant. If Western is paying all of its own employees to testify when they testify for Western, can Western, given this statute, say, "We won't pay anybody to come down and give testimony we don't like?"
>
> MR. LYNCH: I don't know I can say we won't pay anybody to give testimony we don't like. But I think it can make a distinction between Western's witnesses that it calls and witnesses called by someone else.
>
> THE COURT: Isn't that a discriminatory decision based on the subject matter of the testimony?
>
> MR. LYNCH: I don't think it is, no.
>
> THE COURT: If it is not based on the subject matter of the testimony, what is it based on?
>
> MR. LYNCH: Based on who calls the witness. We don't know the subject matter of the testimony at the time the person is called.
>
> THE COURT: To be candid about it, it is based on the notion . . . that Western would pay when employees

**674**

testify in the corporate interest, but Western will not pay when employees testify against the corporate interest; isn't that right?

MR. LYNCH: Your Honor, Western is paying when people are testifying on its case. There is no question about that. There is no question about that. And that is the distinction.

THE COURT: Yes, but why? Why would you pay when they testify on your case and not when they testify on the plaintiff's case?

MR. LYNCH: Apparently it is company policy to do so. I think it is common practice for companies to do that.

\* \* \* \* \* \*

THE COURT: Isn't it true that the plaintiff has called from time to time many witnesses before me who were your employees but who were really . . . favorably disposed to you?

MR. LYNCH: That's right.

THE COURT: And you paid them?

MR. LYNCH: I believe that's right.

\* \* \* \* \* \*

(Tr. 4/26/79, 8–12).

It is clear to the Court that the effect of Western's practice is to penalize employees who testify favorably to the class without exacting a similar price from employees who testify on the corporation's behalf. While this does not necessarily amount to intentional discrimination, it may well serve to discourage class members—most of whom are low-graded factory workers—from seeking the very remedies to which they have been held presumptively entitled. Moreover, the Court notes that it was Western who from the outset of Stage II insisted that damages be awarded only on an individualized basis, thereby necessitating these Stage II proceedings and requiring its female employees and their witnesses to appear for depositions and hearings spanning several days.\* It must also be remembered that the testimony of these class members

will aid the Court in determining the nature, breadth and scope of the injunctive relief which is to issue. The Court can thus perceive no basis for the employer here to distinguish between those employees whom it calls and class members, except the difference in the substance of their testimony, a consideration which is plainly impermissible.

Accordingly, the employer having elected to pay the salaries of some of its employees must treat all of its employees alike. An order will thus enter requiring Western to compensate employee class members for any reasonable periods of absence due to their participation in Stage II proceedings.

---

\* It is worthy of note that many of the supervisors whom Western now pays to testify were themselves perpetrators of the discrimination

which the Court seeks to remedy here. *See Kyriazi v. Western Electric Co.,* 74 F.R.D. 468 (1977); 461 F.Supp. 894 (D.N.J.1978).