28 F.3d 1323
 3 A.D. Cases 660, 5 A.D.D. 864, 5 NDLR P 197
 Michael SANDS, Plaintiff-Appellant,
Emmelyn Logan-Baldwin, Esq., Appellant,
v.
Marvin RUNYON, Postmaster General, United States Postal
Service; U.S. Postal Service; U.S. Postal Service, Buffalo
Division of the North East District; Charles Schubert,
individually and as MSC Manager/Postmaster; Nathan Canter,
individually and as Area Medical Officer; Fran McGovern,
individually and as Personnel Assistant; Alton J. Coleman,
individually and as General Supervisor, Defendants-Appellees.
 No. 770, Docket 93-6164.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 24, 1994.
Decided July 1, 1994.
 
 Emmelyn Logan-Baldwin, Rochester, NY, for plaintiff-appellant.
 Peter R. Maier, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC (Robert S. Greenspan, Appellate Staff, Civ. Div., Frank W. Hunger, Asst. Atty. Gen., Patrick H. NeMoyer, U.S. Atty., Anne VanGraafeiland, Asst. U.S. Atty., U.S. Dept. of Justice, of counsel), for defendants-appellees.
 Before: WALKER, JACOBS, Circuit Judges, and DALY, District Judge.*
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Michael Sands applied to the United States Postal Service for employment as an operator of a letter sorting machine ("LSM"), and was rejected on the sole ground that Sands's chronic knee pain rendered him medically unfit for the job. It is undisputed on appeal that the Postal Service's determination constituted unlawful handicap discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. Secs. 701-797b (the "Rehabilitation Act"). The Postal Service ultimately hired Sands in February 1984, approximately nine months after wrongfully refusing to do so. The United States District Court for the Western District of New York (Telesca, J.) awarded Sands $51,459.54 in back pay and prejudgment interest, directed the Postal Service to restore the annual sick leave Sands would have accrued had he not suffered discrimination, and awarded attorney's fees (including disbursements) in the amount of $23,587.43. On appeal, Sands contests the district court's denial of certain categories of damages and certain other forms of relief, and the district court's calculation of attorney's fees. Sands's counsel appears here as an appellant to contest the district court's ruling that the award of attorney's fees discharges Sands's obligation to pay fees under the retainer agreement.
 
 
 2
 Applying the same remedies available to a plaintiff under Title VII of the Civil Rights Act of 1964, we affirm in part, reverse in part and in part vacate and remand.Background
 
 
 3
 In September or October of 1983, Sands submitted his application to become an LSM operator at the Rochester, New York office of the Postal Service. He took an examination for the position in March 1984, and was notified in April that he had scored 83.5, and that 10 points would be added to account for his status as a disabled veteran. This was a passing score, and the Postal Service decided to hire plaintiff for the position beginning May 26, 1984, subject to a physical examination.
 
 
 4
 The Postal Service's Medical Officer, Dr. Nathan Canter, examined Sands on May 21, 1984, at which time Sands told the doctor that he suffered from chronic pain and discomfort in both knees. Dr. Canter concluded that Sands was for that reason medically unfit to perform the duties of an LSM operator. On July 27, 1984, the Postal Service sent Sands official notice of its determination and of his right to appeal.
 
 
 5
 Sands pursued an administrative appeal, and on February 16, 1985, the Postal Service notified Sands that it had reversed its initial decision and was hiring him as an LSM operator effective immediately.
 
 
 6
 In the interim between the date Sands should have been hired (May 26, 1984) and the date he was actually hired (February 16, 1985), the union representing Postal Service employees entered into a new collective bargaining agreement with the Postal Service. That agreement added approximately thirty months to the time required for newly hired employees to reach the top salary step within a particular salary level. In order to secure for himself the advantage of the old contract, Sands asked to be assigned a seniority date of May 26, 1984. The Postal Service refused his (initially informal) request.
 
 
 7
 On September 16, 1986, after pursuing his administrative remedies, Sands commenced suit in the Western District of New York against Marvin Runyan, the Postmaster General; the United States Postal Service; and four other officials of the Postal Service individually and in their official capacity. The complaint alleged that the Postal Service's failure to hire him on May 26, 1984 violated the Rehabilitation Act, Sands's rights under the First and Fifth Amendments, and the New York State Human Rights Law.
 
 
 8
 In January 1989 the district court referred the case to a magistrate judge as special master, who issued a report in December 1990 recommending (i) that all claims be dismissed except the Rehabilitation Act claim against the Postmaster General, and (ii) that, as to that surviving claim, summary judgment be granted in favor of the plaintiff. In April 1991 the district court issued a decision largely adopting the magistrate judge's recommendations. Relevant to this appeal, the district court granted summary judgment in favor of Sands as to liability on his Rehabilitation Act claim, and postponed consideration of relief pending further proceedings.
 
 
 9
 The original order required that all evidence respecting monetary and affirmative relief be submitted by June 24, 1991. Following a number of extensions, the district court ordered that all discovery be closed as of August 8, 1991; received written submissions; and on April 20 and 22, 1993 conducted an evidentiary hearing. On May 5, 1993 the district court issued an order addressing most of the forms of relief demanded by Sands. The district court ordered that Sands was entitled to back pay, and credit for sick leave and annual leave that he would have earned had he been hired on May 26, 1984. The district court declined to order: retroactive promotion; retroactive employer's contributions to plaintiff's Thrift Savings Plan account; removal of negative information allegedly placed in Sands's personnel file; insertion of a favorable work appraisal in his personnel file; and an injunction barring retaliatory action against plaintiff. The district court also awarded attorney's fees (including disbursements) in the amount of $23,587.43, and directed that $10,131 of the attorney's fee award be credited to plaintiff to reflect the $10,131 that plaintiff had previously paid his lawyer under their retainer agreement. To resolve some small discrepancies, the court ordered the Postal Service to recalculate plaintiff's back pay award and prejudgment interest in accordance with its decision.
 
 
 10
 In June 1993, the district court entered a final order awarding plaintiff $51,459.54, including prejudgment interest, ordering restoration of annual and sick leave that he would have earned had he been hired in May 1984, and awarding attorney's fees in accordance with its earlier decision. Sands appealed and the Postal Service cross appealed. On the advice of the Solicitor General, the Postmaster General moved to dismiss his cross appeal, which motion was granted.
 
 
 11
 Sands appeals nearly every single aspect of the final award. Thus Sands challenges:
 
 
 12
 . The failure to grant each measure of relief denied by the district court;
 
 
 13
 . The failure to award credits for lost wages resulting from time plaintiff spent in administrative appearances, trial preparation and the damage hearing, a measure of relief sought by Sands but not addressed by the district court;
 
 
 14
 . The computation of back pay and prejudgment interest thereon;
 
 
 15
 . The computation of attorney's fees.
 
 
 16
 In addition, Sands's counsel challenges the order allocating part of the attorney's fee award to Sands for the reimbursement of money he paid his attorney during the course of the litigation.
 
 Discussion
 
 17
 The Rehabilitation Act provides (at 29 U.S.C. Sec. 794a(a)(1)) that a successful plaintiff shall have available the same remedies that would be available to a plaintiff pursuant to section 717 of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-16. This entails an "order [of] such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. Sec. 2000e-5(g). "[T]he purpose ... [is] to make persons whole for injuries suffered on account of unlawful employment discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). The many issues raised on this appeal require that we address the concept and application of "make whole" relief in employment discrimination cases.
 
 
 18
 We generally review such remedial relief on an abuse of discretion basis. See Franks v. Bowman Transp. Co., 424 U.S. 747, 770, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976) ("The fashioning of appropriate remedies [for employment discrimination] invokes the sound equitable discretion of the district courts."); Bridgeport Guardians, Inc. v. City of Bridgeport, 933 F.2d 1140, 1149 (2d Cir.) (when employment discrimination established, district court has broad power to fashion relief it believes appropriate), cert. denied, --- U.S. ----, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). However, when the district court is sitting as a factfinder, as for example when computing the measure of money damages, we will reverse the computation of damages only if clearly erroneous. United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 697 (2d Cir.1991).
 
 
 19
 A. Computation of Back Pay and Prejudgment Interest
 
 
 20
 An applicant denied employment in violation of the civil rights laws is "ordinarily [ ] entitled to an award of back pay from the date of [the discriminatory action] until the date of judgment." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 144 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); see also Clarke v. Frank, 960 F.2d 1146, 1151 (2d Cir.1992). "[T]his Court has held that 'it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award.' " Saulpaugh, 4 F.3d at 145 (quoting Clarke, 960 F.2d at 1154) (emphasis in original).
 
 
 21
 The district court awarded back pay compensating Sands for two distinct deprivations of income. Although this award is unchallenged except as to the calculation of interest, the elements of the back pay award bear upon other aspects of Sands's appeal.
 
 
 22
 First, the district court properly held that Sands was entitled to back pay at the contemporaneously prevailing wage rates beginning on the date he should have been hired (May 26, 1984), and ending at the date of his actual hiring (February 16, 1985), less any money he earned during that period in other employment. Second, the district court recognized that, after Sands went to work on February 16, 1985, he was paid on a basis that failed to reflect step increases, cost of living increases, and other increases he would have enjoyed if he had been hired on May 26, 1984. The district court therefore properly credited Sands retroactively with a seniority date of May 26, 1984, and ordered the Postal Service to calculate and pay the incremental amount. The order directed that the calculation and payment reflect Sands's loss through March 31, 1993. Finally, the court ordered that the new calculations should not be reduced to account for taxes, retirement and medical contributions.
 
 
 23
 The only issue raised on appeal is the decision to order that the back pay--and the prejudgment interest on the back pay--be calculated only up to March 31, 1993. This order was entered on May 5, 1993. The final order was not entered until June 9, 1993, when the Postal Service had submitted the revised calculations. Back pay should be calculated to the date of judgment, and should ordinarily include compound interest. Saulpaugh, 4 F.3d at 145. Brief delays occasioned by complex accounting or court administration are unavoidable. And exceptions can and should be made where a plaintiff delayed final resolution of the case through dilatory tactics. See id. ("the district court may wish to deny interest for specific years if it concludes that a delay in the litigation was the result of dilatory tactics by the plaintiff"). Nothing evident in the record on this appeal, however, justifies the curtailment of back pay and interest. The order therefore failed to make plaintiff whole by depriving him of a clear and readily calculable measure of damages, i.e., back pay and interest for the period from March 31, 1993 through the date of judgment. Moreover, because the Postal Service has failed to pay any back pay as of yet (and, as explained below, Sands is currently not being compensated at the appropriate salary level), judgment should be entered anew on remand in accordance with this opinion.
 
 B. Change of Seniority Date
 
 24
 Sands contends on appeal that the Postal Service has failed to credit him retroactively with a seniority date of May 26, 1984. In a post-argument submission requested by this Court, the Postal Service represented that it had merely postponed any alteration of plaintiff's personnel file pending the outcome of this appeal, and that it would comply with the district court's order and correct plaintiff's file to reflect a seniority date of May 26, 1984 no later than March 1, 1994. Because this case will be remanded to the district court for further proceedings, we simply note these facts for the record.
 
 C. Denial of Retroactive Promotion
 
 25
 Plaintiff argues that the district court erred in denying him a retroactive promotion as part of his "make whole" relief. While plaintiff's briefs are rather confusing, it appears to us that he is making two separate claims here: (1) a claim for retroactive seniority placing him at salary Level 6, Step O, and (2) a claim for a retroactive promotion to a position as a Self Service Machine Operator.
 
 
 26
 Salary Step. In April 1988, Sands voluntarily elected to step down from his salary Level 6, Step H, to salary Level 5, Step H, because doing so qualified him for a $2500 annual increase in pay by reason of some arcane feature of the postal compensation scheme. Under the contract that would have governed his compensation if he had been hired in May 1984, Sands would not have had an incentive to step down, because his annual pay at the Level 6, Step H in April 1988 would have been $27,029, and his pay at Level 5, Step H would have been $741 less. In calculating Sands's back pay, the district court correctly concluded that plaintiff should not suffer a penalty by reason of this decision, and ordered the Postal Service to recalculate plaintiff's salary history to account for any differential between what plaintiff actually earned and what he would have earned had he remained at Level 6, Step H in April 1988 and enjoyed the step increases, contractual increases, and cost of living increases that he would have received in Level 6 for the hours he actually worked through the date of judgment.
 
 
 27
 Although the district court directed the Postal Service to use salary Level 6 in computing plaintiff's back pay (and ordered the Service to correct plaintiff's personnel records to reflect a seniority date of May 26, 1984), the district court declined to order that plaintiff be promoted retroactively from his current salary Level 5 to salary Level 6 (and the letter Step O to which he would have progressed with the passage of time). The district court found that relief by way of retroactive promotion would be inherently speculative in character, given: the web of bureaucratic rules and regulations governing postal work assignments; the maneuvering that these rules and regulations engender in postal employees, each pursuing personal preferences regarding salary level, work hours, days off, job tasks, etc.; and the changes in these individual preferences over the course of a career. Therefore the district court concluded that it was impossible to ascertain the precise career path an individual might have taken, and declined to engage in what it viewed as no better than conjecture and surmise.
 
 
 28
 "A court that finds unlawful discrimination is not required to grant retroactive relief." Ingram v. Madison Square Garden Center, Inc., 709 F.2d 807, 812 (2d Cir.), cert. denied, 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983). The object in making a plaintiff whole is simply to place " '[t]he injured party ... as near as may be, in the situation he would have occupied if the wrong had not been committed.' " Moody, 422 U.S. at 418-19, 95 S.Ct. at 2372 (quoting Wicker v. Hoppock, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)) (emphasis added). Certainly, a court is not required to construct a hypothetical career path on a retrospective basis, relying upon mere probabilities or a plaintiff's hopes and ambitions. Nevertheless, retroactive seniority is ordinarily considered to be a relatively fundamental form of relief where a plaintiff was subject to unlawful discrimination in the hiring process. See Franks v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). With respect to Sands's request to be placed at salary Level 6, Step O, we hold that the district court clearly erred in denying this relief. Plaintiff certainly met his burden of demonstrating that, but for the Postal Service's discrimination and his conduct in mitigating his damages, he would be at that salary level today.
 
 
 29
 It is undisputed that Sands was at one time at salary Level 6, and that he stepped down to Level 5 solely to realize a salary increase that he would have enjoyed without stepping down if he had not suffered discrimination. Absent Sands's decision to step down, there is no reason to think he would not have stayed at Level 6. The relief sought by Sands is consistent with the rule that "[a] victim of employment discrimination has the same duty to mitigate his damages as any victim of a tort or breach of contract." Clarke, 960 F.2d at 1152 (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 231 & n. 15, 102 S.Ct. 3057, 3065 & n. 15, 73 L.Ed.2d 721 (1982)). Insofar as an avenue was open to plaintiff to engage in such mitigation, he had a legal obligation to do so.
 
 
 30
 The record establishes that, within any given salary level, progression from one lettered "step" to the next is purely a function of time. The record also establishes that a number of employees were hired at the time that the Postal Service wrongfully refused to hire Sands and that all of those employees were at salary Level 6 at the time of the damages hearing. Given: (a) this proof, (b) the district court's holding that May 26, 1984 is Sands's proper seniority date, and (c) the district court's use of salary Level 6 in computing Sands's back pay award, we find that it was clearly erroneous for the district court to find that plaintiff had failed to demonstrate that he would be at salary Level 6, Step O today.
 
 
 31
 Machine Assignment. Sands also argues that the district court abused its discretion by refusing to order that Sands immediately be placed in a job as the operator of a Self Service Machine. We decline to reach this issue. In the damages hearing, plaintiff's counsel stated that the issue of retroactive promotion could be resolved in one of three ways: "He can be given simply the grade--the Level 6, Step O pay and continue to work his present job. He can be given the self-service tech. job. He can be given another appropriate Level 6, Step O job." Because we have decided to reverse the district court and order that plaintiff be placed at the requested pay level, he will receive one of the three forms of relief his counsel requested on an alternative basis at the hearing on damages.
 
 D. Retroactive Thrift Savings Contributions
 
 32
 After Sands began work, he was given the opportunity to contribute a specified percent of his salary to the Postal Service's Thrift Savings Plan. Sands argues that, because his pay was lower than it should have been due to the Postal Service's discrimination, he lacked the financial "cushion" necessary to participate, and therefore withdrew from the Plan temporarily in order to finance this litigation. At the damages hearing, Sands argued that the Postal Service should credit to his account retroactively the amount of matching employer contributions he would have received had he not withdrawn from the Plan. The district court rejected plaintiff's request, finding the claim too speculative inasmuch as there was "no support in the record to justify a finding that, but for the Postal Service's discrimination, [plaintiff] would have remained in the [Plan]."
 
 
 33
 "In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages.... [T]he [finder of fact] is not allowed to base its award on speculation or guesswork." Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir.1992). We are not asked to consider whether such relief would be appropriate where an employee is prohibited from participating in a savings plan because of wrongful termination. See, e.g., Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104 (8th Cir.1994). Rather, Sands voluntarily withdrew from participation in the plan in order to finance this litigation. The district court did not abuse its discretion in concluding that Sands's claim is in this respect entirely too speculative. The Civil Rights Act "stresses that retroactive relief 'may' be awarded if it is 'appropriate.' " City of Los Angeles, Dep't of Water & Power v. Manhart, 435 U.S. 702, 719, 98 S.Ct. 1370, 1380, 55 L.Ed.2d 657 (1978) (discussing Title VII remedies). Courts are not well equipped to reconstruct history, and are in no position to surmise what the plaintiff might have chosen to do with his money if he had not suffered discrimination or if he had pursued financial opportunities other than or in addition to this lawsuit. He might have continued to put the money into the Plan, or he might have put it into stocks or lottery tickets. All of these opportunities are reasonably subsumed in the award of prejudgment interest.
 
 E. Letter of Commendation
 
 34
 Sands asked the district court to order that the Postal Service prepare a letter of commendation and place it in Sands's personnel file. The district court did not abuse its discretion in refusing this request. The only instance cited by plaintiff in support of his request is Ross v. Beaumont Hosp., 678 F.Supp. 680 (E.D.Mich.1988), in which a hospital that discriminated against the surgeon-plaintiff by reason of his obesity and narcolepsy was ordered to refrain from making any reference to his weight and handicap in letters of reference written on the plaintiff's behalf. See id. at 684. The court justified that order on the ground that consideration of these conditions in making employment decisions is in itself discriminatory. This appeal does not present that issue. Nor is this a case in which an employee alleges that a former employer is refusing to provide a letter of recommendation for purely discriminatory reasons. See Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1055 (2d Cir.1978) (per curiam) (while "an employer's mere refusal to provide an employee with a reference does not violate [Title VII,] ... the complaint here alleges ... that the reference was refused in retaliation for plaintiff's efforts to protect herself against the employer's other discriminatory conduct....").
 
 
 35
 Sands seems to be arguing that the Postal Service must place a commendation into his file to counter (i) resentment against him for pursuing his rights and (ii) general feelings of dislike harbored by his co-workers toward him. Victims of discrimination are entitled to redress whether or not they are exemplary employees; it follows therefore that victory in this lawsuit does not imply a commendation of Sands either as an employee or as a human being. Circumstances are few in which a court can properly order an employer to sweeten a plaintiff's personnel file with praise of the employee's talents, abilities, and work habits--which affirmations might not even be true. As the district court put it, courts "do not possess the power to compel co-workers to like each other."
 
 F. Expungement
 
 36
 Sands next argues that the district court erred in denying his request for an order directing the Postal Service to expunge negative information from his personnel file. He alleges that, since initiating this action, he has been branded a troublemaker, and that his personnel file contains negative references directly attributable to his attempt to vindicate his rights by litigation. At the damages hearing, his attorney offered to present one witness who would testify that others had told her that Sands was a troublemaker, and to introduce certain documentary evidence to further back the claim (though not, of course, the personnel file itself). In response, the Postal Service simply stated that no such information existed, and it offered to make Sands's personnel file available to the court for an in camera examination. The district court denied Sands's request, holding that he failed to present specific evidence of "incidents of purposeful retaliation or discrimination while on the job which caused him to be harmed," and therefore no justification existed to even review the personnel file.
 
 
 37
 We affirm this denial of relief, although on slightly different grounds from those relied on by the court below. This issue is in the nature of a previously-unpleaded claim of discriminatory retaliation. See, e.g., Sumner v. United States Postal Service, 899 F.2d 203 (2d Cir.1990); see also 29 C.F.R. Sec. 1614.101(b) ("No person shall be subject to retaliation for opposing any practice made unlawful by ... the Rehabilitation Act ... or for participating in any stage of administrative or judicial proceedings under those statutes."). The relief of expungement does not alleviate harm caused by the wrongful refusal to hire. Though there is some connection between the two, inasmuch as the alleged retaliatory references in his file are supposedly attributable to his filing of his complaint, any such references would constitute a distinct act of discrimination causing a distinct harm. The procedural posture of the case, however, precluded consideration of such a claim for the first time in a damages context. There had been no finding of liability and defendant surely made no concession of liability on such a claim. Discovery had ended long before. The parties were in the midst of a damages hearing--the sole purpose of which was to determine the harm plaintiff suffered by being denied employment with the Postal Service between May 1984 and February 1985 and the appropriate remedies to "make him whole."
 
 
 38
 In a retaliation case, the "[p]laintiff[ ] bear[s] the burden of proving, by a preponderance of the evidence ... that he engaged in protected [activity], that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Sumner, 899 F.2d at 208-9; see also Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir.1980). Assuming without deciding that Sands here engaged in a "protected activity" by commencing this lawsuit,[1] it is clear that the Postal Service knew about it. However, to succeed on this claim, Sands would have had to prove the existence of the negative statements in his personnel file, and that they were placed there for an unlawful reason. Sands had the opportunity to pursue a retaliatory discrimination claim during the nine-year life of this case (assuming there was adequate basis for pleading the claim). The proper course would have been for plaintiff to obtain the file in discovery, and then amend his complaint to add the new claim. See, e.g., Bethlehem Steel, 622 F.2d at 45 (plaintiffs, who had filed discrimination claims with EEOC and a class-action Title VII case in district court, amended complaint to add retaliation claim). A damages hearing is not an appropriate occasion for re-opening discovery; moreover, even if it were possible to entertain Sands's claim at that date, certainly it was not an abuse of discretion for the district court to refuse to do so.
 
 G. Leave Credits
 
 39
 Sands claims that he is entitled to reimbursement for the leave time he used in pursuing this litigation. None of the cases cited by Sands even remotely supports his argument. Two of them, Herrman v. Coleman, 428 F.Supp. 447 (D.D.C.1977) and Williams v. Saxbe, 12 Empl. Prac. Dec. (CCH) p 11,016 (D.D.C.1976) involved nothing more than ordinary claims for sick leave and annual leave as part of a back pay award. We have already noted above that the district court correctly included these elements of relief in plaintiff's award. The other case cited by Sands, Kyriazi v. Western Elec. Co., 469 F.Supp. 672 (D.N.J.1979), is also beside the point. The district court there held that, because the employer paid wages to employees who testified on behalf of the employer, refusal to compensate likewise employees testifying against the employer was a discriminatory practice under Title VII. 469 F.Supp. at 673 (citing 42 U.S.C. Sec. 2000e-3(a)).
 
 
 40
 Sands alleges in his main brief that "[t]he Post Office in fact has rules that assure the employee does not lose leave credits to pursue complaints." Sands offered no citation for this assertion until his reply brief, which references a Postal Service internal rule and a federal regulation published in the Code of Federal Regulations. To delay citing rules and regulations on which an appellant relies, until reply, is contrary to our rules.[2] This tactic deprives the Postal Service of any meaningful opportunity to respond, thereby depriving this Court of the (necessary) opportunity to have the issue fully developed and argued in the briefs.
 
 
 41
 The Postal Service rule is inapplicable on its face. It apparently grants "court leave" to " 'an employee who is summoned in connection with a judicial proceeding, ... [to] witness in a non-official capacity on behalf of a private party in a judicial proceeding to which the Postal Service is a party....' " Appellant's Reply Brief at 10 (quoting Employee and Labor Relations Manual, Part 516.316 (1984)). The term "an employee who is summoned" signifies summoning by someone other than the employee; Sands's attendance at proceedings he initiates is not within that language. The activity for which court leave is granted is to "witness". We therefore read this to apply only to a Postal employee summoned to appear as a witness for a private litigant other than the employee seeking court leave.
 
 
 42
 The federal regulation cited by Sands, 29 C.F.R. Sec. 1614.605, concerns an employee who spends "official time" responding to or appearing before the EEOC. Sands fails, however, to direct us to the page or pages in a lengthy transcript in which (he claims) he made an offer of proof to the district court. Moreover, he fails to direct us to any documents in the Appendix that might lend factual support to this claim. Finally, as discussed above, because this has been raised for the first time in a reply brief, the Postal Service has been deprived of an opportunity to address its interpretation of the regulation, or the circumstances (if any) in which the matter was raised before the district court. Under these circumstances, we decline to construe the regulation or to find error on the part of the district court.
 
 H. Attorney's Fees
 
 43
 Three issues concerning attorney's fees are raised on appeal: the number of hours; the hourly rate; and the order that Sands's counsel credit plaintiff the amount of money he paid to his attorney during the course of this litigation. We note that his counsel has added her name to the caption on this appeal as "appellant," presumably so that she can argue the third challenge to the award of attorney's fees.
 
 
 44
 In an employment discrimination case, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. Sec. 2000e-5(k). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This calculation "is a factual issue whose resolution is committed to the discretion of the district court." Saulpaugh, 4 F.3d at 145 (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir.1992)). In reviewing an attorney's fee award, "we must bear in mind that the district court has wide discretion in determining the amount [of the award]; thus, absent an abuse of discretion or an error of law we will not disturb the district court's assessment of the ... award." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993).
 
 
 45
 The district court disallowed hours in four instances. First, the court disallowed time spent issuing and attempting to enforce an untimely and meritless subpoena duces tecum. Second, the court disallowed time spent consulting with experts and "using a significant portion of [the] pretrial brief to support" the claimed hourly rate for the attorney's fees. This work was found to be unnecessary because, less than two months earlier, the same judge had addressed this same attorney's fees in a rather similar case covering the same time period. Third, plaintiff's counsel spent time working on a claim for retroactive application of the Civil Rights Act of 1991, which the court found to be meritless given this Court's pronouncements on that issue. Finally, the court disallowed 12 hours attributed to "computer programming" that counsel subsequently conceded was erroneously posted as time spent on this litigation.
 
 
 46
 We affirm the district court's computation of hours in all respects. "The district court ... should exclude from this initial fee calculation hours that were not 'reasonably expended.' " Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. The unreasonable expenditure of time includes "hours that are excessive, redundant, or otherwise unnecessary...." Id. Both the pre-trial subpoena, which the court found to be untimely and meritless, and the work on plaintiff's Civil Rights Act of 1991 claim, which was equally groundless,[3] were therefore properly excluded from the total hours. See Hensley, 461 U.S. at 435, 103 S.Ct. at 1940 ("work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.... [T]herefore no fee may be awarded for services on the unsuccessful claim.") (internal quotations omitted).
 
 
 47
 The court also disallowed time spent in consultation with experts and in preparation of briefs on the question of the appropriate hourly rate for attorney's fees. In so doing, the district court was relying on the fact that it was intimately familiar with the value of this attorney's work, having just engaged in the same calculus on another employment discrimination suit. We recently affirmed that fee award in Saulpaugh. 4 F.3d at 146. It was no abuse of discretion for the court to find counsel's work in this regard to be redundant and unnecessary.
 
 
 48
 The next issue before us is the district court's determination that counsel should be compensated at a rate of $110 per hour. Plaintiff (or his attorney) proposed a rate of $150 per hour for the period from 1985 through July 15, 1990, $185 per hour from that time to March 3, 1993, and $200 per hour thereafter. As the district court noted, these are the same rates proposed in Saulpaugh, and are in excess of the retainer agreement between Sands and his counsel, which specifies a rate of $80 per hour. Here as in Saulpaugh, the district court fixed the hourly rate by reference to "the retainer agreement as well as to an average of the historic fees over the period. It was on this basis that the district court concluded that $110 per hour was a reasonable rate. This determination was a sensible one." Saulpaugh, 4 F.3d at 146.
 
 
 49
 The district court properly noted that, in a longstanding litigation, it is sometimes appropriate to apply a multiplier to the basic hourly rate to account for the delay between the investment of time and the receipt of the fee award. Here, the district court refused to apply a multiplier, attributing much of the delay to Sands's counsel. In turn, Sands's counsel argues that the delays were the fault of the district court. Our examination of the record confirms that at least some delay in this nine-year litigation was surely attributable to the district court. (Plaintiff's summary judgment motion, finally decided in 1991, had been pending before the court for some time.) And, although these delays are not evidently inconsistent with sound priorities in addressing a busy calendar, it would be harsh to deny counsel some allowance for the time value of attorney's fees delayed by considerations of judicial administration. That said, we see no abuse of discretion in denying a multiplier here, for several reasons.
 
 
 50
 Some of the delay was clearly attributable to plaintiff's counsel. There are letters from plaintiff's counsel in the record apologizing for errors and delays. The district court found that plaintiff engaged on several occasions in meritless strategic maneuvers (e.g., plaintiff's pre-trial subpoena and plaintiff's motion to strike the offer of judgment) that protracted the litigation. Moreover, the court found that there was little activity in the years 1985, 1986, 1988, 1989, and 1990, and that, even though plaintiff succeeded in his summary judgment motion on liability in 1991, settlement negotiations dragged on for the next 18 months.
 
 
 51
 Finally, the Postal Service made an offer of judgment in December 1992 that would have given plaintiff a back pay award equal to the amount calculated by his own expert, and paying his attorney one-half of her requested fees. The district court remarked that this offer was strikingly similar to the court's eventual judgment in 1993. This is a factor a court may use in considering the attorney's fee award. Cf. Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (attorney's fee award under 42 U.S.C. Sec. 1988 subject to provision of Fed.R.Civ.P. 68, shifting costs to plaintiff where final award does not exceed amount offered in settlement); see Hensley, 461 U.S. at 433, n. 7, 103 S.Ct. at 1939, n. 7 (since Sec. 1988 is patterned upon attorney's fee provisions of earlier civil rights statutes, cases construing Sec. 1988 are generally applicable to all attorney fee provisions in civil rights law).
 
 
 52
 The district court took notice of the provision in the retainer agreement requiring the attorney's approval of any settlement: "It is understood and agreed that neither of us shall settle any of the claims ... without first having obtained the consent of the other." While the district court merely raised in a footnote the question of the ethical propriety of this provision (noting the apparent conflict with EC 7-7 of the Code of Professional Responsibility), we approve the district court's implicit weighing of this factor in considering attorney's fee issues.
 
 
 53
 That is not the end of the matter. Sands's counsel challenges the district court's determination that, "[b]ecause Attorney Logan-Baldwin was paid the amount of $10,313 during the course of this litigation ... she shall then remit that amount to the plaintiff from the total fee award." It is argued that the district court misconstrued the retainer agreement, and that the agreement only provides that the $80 is a reduced rate that applies if plaintiff loses. The retainer agreement, however, states that plaintiff agrees to compensate his attorney at $80 per hour, and that if plaintiff is successful both on the merits of his litigation and on the attorney's fee application, then the attorney's compensation shall be the greater of either the court's award or the $80 per hour contemplated by the agreement.
 
 
 54
 In this case, the $80 per hour fee multiplied by the 204 hours for which plaintiff's attorney initially requested compensation yields $16,320, which is $3,150 less than the $19,470 awarded by the district court. The agreement therefore unambiguously provides that Ms. Logan-Baldwin's compensation for this litigation shall be $19,470. We therefore affirm the district court's order that $10,313 be refunded to plaintiff out of the total attorney fee award. Plaintiff, should he agree with his attorney's opposition to this order, is of course free to remit out of his own pocket any amount in excess of the actual fee award that he wishes. He is, however, under no legal obligation to do so; nor is the Postal Service under any obligation to pay these excess sums.
 
 
 55
 Still other issues have been raised on appeal, none of which have merit.
 
 Conclusion
 
 56
 In conclusion, we vacate and remand the district court's order that back pay and prejudgment interest be calculated only to March 31, 1993. We reverse on the issue of retroactive promotion, and direct the district court to enter an order that the Postal Service place plaintiff at the grade Level 6, Step O that he would be at but for the initial discrimination. We affirm in the numerous other respects.
 
 
 
 *
 Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 While the Rehabilitation Act contains no parallel provision to that under Title VII creating a cause of action for retaliatory discrimination, 42 U.S.C. Sec. 2000e-3, the Department of Labor has promulgated a regulation barring such conduct. 29 C.F.R. Sec. 1614.101(b). One federal court has held that this regulation provides a private cause of action. Lussier v. Runyon, Dkt. No. 92-397-P-H, 1993 WL 434078, * 1 (D.Me. Oct. 15, 1993)
 
 
 [2]
 Sands has not furnished us with a copy of these rules and regulations; he has not directed us to where the language of the rule may (or may not) be found among 500 pages of court exhibits that are identified only by number in the Appendix; and he has not set forth the full relevant text in his brief. These omissions constitute non-compliance with Local Rule 30(c) and Fed.R.App.P. 28(f)
 
 
 [3]
 We held against the retroactivity of that statute in Butts v. City of New York Dep't of Housing Preservation & Development, 990 F.2d 1397 (2d Cir.1993). Shortly thereafter, plaintiff argued for retroactive application, stating erroneously that "the Second Circuit ... [is] holding decision on all cases raising the retroactivity question until the Supreme Court rules." The Supreme Court recently held against retroactivity, thereby confirming what has been the settled law of this Circuit. Landgraf v. USI Film Products, --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Rivers v. Roadway Express, Inc., --- U.S. ----, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)