67 F.3d 307
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John D. MORRIS, Plaintiff-Appellant,
v.
Constance Berry NEWMAN, Director, Office of Personnel
Management; James J. Jura, Administrator,
Bonneville Power Administration,
Defendants-Appellees.
 No. 93-35705.
 United States Court of Appeals, Ninth Circuit.
 Argued Submission Deferred May 4, 1995.
Resubmitted May 22, 1995.
Decided Sept. 26, 1995.
 
 Before: BROWNING, REAVLEY,* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John D. Morris sued the Bonneville Power Administration (BPA) under the Rehabilitation Act for discrimination based on his record of mental impairment. He also sued the BPA under the Administrative Procedures Act, contending that the BPA did not accord him the appropriate preference, as a formerly disabled veteran, required under 5 U.S.C. Secs. 1302(b), 2108 and 3309. The district court denied relief under the Rehabilitation Act, but held that the BPA did not accord Morris the appropriate preference under the laws governing the veteran's preference. The court ordered the BPA to offer Morris the next available job in his field. Morris appeals, contending that the court erred in not awarding relief under the Rehabilitation Act. We affirm.
 
 BACKGROUND
 
 3
 John Morris is a veteran with 14 years of service in the Navy. In 1970 he was diagnosed as a paranoid schizophrenic and was hospitalized for 30 days and found unfit for service. He was rated 30% compensably disabled by the Veterans Administration on November 18, 1970, but his service compensable disability was reduced to 0% on November 1, 1976. The Veterans Administration recognized his service connected disability in 1985.
 
 
 4
 In the Navy Morris worked as an electrician, and he worked as an electrician in the private sector from 1972 to 1978. In 1978 Morris took a job as a Power System Electrician with the BPA. He left the BPA in 1982 for personal reasons. He applied to work there again in 1983 and worked there as a temporary Power System Electrician for six months in 1984, for six months in 1985, and for one year in 1987. During this time, Morris received favorable ratings from his supervisors.
 
 
 5
 In November, 1987 Morris was considered for a permanent position as a Power System Electrician in Vancouver, Washington. The selection process for that position is the subject of this lawsuit. Morris and the other candidates for this position were ranked according to a rating based on the raw score they received on a technical exam, with additional points granted for veteran's preference. Several of the other candidates were given five additional points as veterans. Morris was the only candidate given 10 additional points because he was a disabled veteran. See 5 U.S.C. Sec. 3309. Morris' raw score was 82, but with the additional points his total rating was 92, making him one of the three applicants with the highest overall rating. There were eleven applicants considered for a total of nine positions. Only Morris and one other applicant, who was not a veteran, were not hired.
 
 
 6
 The BPA followed a "rule of three" in selecting from the applicant pool. This meant that the BPA supervisor making the hiring recommendations would look only to the top three candidates and could select any of those three for the job in question. The only restriction in hiring from that three-person pool was that the supervisor could not choose someone without a veteran's preference over someone with a veteran's preference. The two persons not selected would then be eligible during the next selection round and would compete with the fourth person on the list. The two applicants not selected in this round would then be eligible and would compete with the fifth person on the list. After three rounds, if still not selected, a person would no longer be considered.
 
 
 7
 Morris' ten points for his veteran's preference put him in the first three rounds, but he was not selected. In each round another preferred veteran was selected, but none of these veterans were disabled veterans, and therefore, their ratings were only inflated five points above their raw scores. In the second and third round the candidates selected had lower overall ratings than Morris (both with 90 compared to Morris's 92), but in all three cases the persons selected had higher raw scores on the technical exam. Apparently, the supervisor making the selections, Keith Rivers, gave preference to veterans over non-veterans, but chose among veterans based solely on the raw scores. In later rounds people without any veteran's preference were hired because in those rounds none of the three candidates had veteran's preferences.
 
 
 8
 Under this selection procedure, a person entitled to a ten-point veteran's preference (generally speaking a disabled veteran rather than a veteran without a disability) was inherently disadvantaged because he would be grouped with those with the highest overall rating, but would probably never be selected because the person doing the selecting would always choose the veteran with the highest raw score. Since five-point veterans only had five points added to their raw score, they would always have higher raw scores than ten-point veterans. This is what happened to Morris. If he had only received five points for his veteran's preference, he would have been considered in the later rounds and would have been competing with those with more comparable raw scores and would probably have been selected.
 
 
 9
 Morris complained to the BPA about the selection process. Morris testified that he was told that since he had already filed an EEOC complaint alleging handicap discrimination in 1986, he did not have to file again with the BPA and should take his complaints to a "higher authority," which apparently meant the Office of Personnel Management.[1]
 
 
 10
 The district court did not call a jury. Instead, the judge heard all the evidence and concluded that a jury trial was unnecessary because there was insufficient evidence of intentional discrimination as a matter of law. The district court found that the selection procedure used by Rivers did not give Morris fair consideration and discriminated against the ten-point veteran. The court concluded that Morris was not selected for the position while others who had no record of any handicap were selected and that the BPA produced no evidence of a legitimate, non-discriminatory motive for failing to select Morris. The court also concluded, however, that the BPA did not intentionally discriminate against Morris because of his record of mental handicap and it did not pursue a policy or selection process which had an adverse impact on plaintiff because of his record of mental impairment.
 
 
 11
 The district court concluded that Morris could recover under the Administrative Procedures Act, 5 U.S.C. Sec. 706, because Rivers' reliance on the raw technical scores in selecting among the three relevant applicants was arbitrary, capricious, and an abuse of discretion in violation of the laws governing the veterans preference, 5 U.S.C. Secs. 1302(b), 2108, 3309. The court also concluded that the BPA violated 5 U.S.C. Sec. 3317(b) by removing Morris' name from future eligibility for employment as a Power System Electrician without notifying him in advance as that statute requires. The BPA was therefore ordered to offer Morris the next job available as a BPA Power System Electrician. Morris was not entitled to back pay or attorney's fees under the APA. Morris appeals.
 
 DISCUSSION
 
 12
 Morris contends that the BPA discriminated against him because of his history of disability in violation of the Rehabilitation Act. He contends that this discrimination can be shown under both a disparate treatment and a disparate impact theory. Under 29 U.S.C. Sec. 794(a):
 
 
 13
 No otherwise qualified individual with a disability in the United States as defined in section 706(8) of this title, shall, solely by reason of her or his disability ... be subjected to discrimination under any program or activity ... conducted by any Executive agency....
 
 
 14
 The BPA contends that Morris cannot recover under the Rehabilitation Act under either a disparate impact or a disparate treatment theory because he has not shown that he was handicapped at the time of the selection procedure. Apparently, Morris is in fact no longer disabled. To qualify for protection under the Rehabilitation Act, however, a person need not be presently handicapped, because the Act defines a "handicapped" individual as any person who: 1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; or 2) has a record of such an impairment; or 3) is regarded as having such an impairment. See 29 U.S.C. Sec. 706(7)(B); see also School Board v. Arline, 107 S.Ct. 1123, 1126-27 (1987) (Congress intended to protect against discrimination against a "person who has a record of, or is regarded as having, an impairment [but who] may at present have no actual incapacity at all.") (citation omitted). Morris has a record of a handicap.
 
 A. Disparate Impact
 
 15
 The district court found that the selection procedure used by the BPA discriminated against the ten-point veteran, but it also concluded that the BPA did not pursue a policy or selection process which had an adverse impact on plaintiff because of his record of mental impairment. Morris contends that the court's conclusions with respect to his disparate impact claim are inconsistent. He contends that if the BPA's procedure discriminated against ten-point veterans, as the court held, its procedures necessarily discriminated against Morris because of his record of mental handicap. Morris essentially contends that the only distinction between being a ten-point veteran and a five-point veteran is the existence of a disability.
 
 
 16
 The statute governing the ten-point veteran's preference indicates that a ten-point veteran's preference is given to persons who are veterans with a service related disability or who are mothers, wives or husbands of disabled veterans or to the mother or wife of a veteran who lost his life in the service of his country. See 5 U.S.C. Secs. 3309 and 2108(3)(C)-(G). Therefore, people without disabilities can also be discriminated against under a selection process which is biased against ten-point veterans. In addition, handicapped people who do not have service related disabilities do not qualify as disabled veterans and do not receive the ten-point preference, and therefore, are not at a disadvantage under the BPA selection method.
 
 
 17
 Morris contends that a disparate impact claim is viable even if the employment practice in question adversely affects people outside the protected class and does not adversely affect all people within the protected class. He points to a Ninth Circuit case reviewing a claim for disparate impact brought by Hispanic employees against an employer who required that its employees speak only English on the job. Garcia v. Spun Steak Co., 998 F.2d 1480 (9th Cir.1993), cert. denied, 114 S.Ct. 2726 (1994). The court in that case recognized that not all workers of Hispanic descent speak Spanish and that some non-Hispanic workers speak Spanish. The court stated in dicta that these facts were of no consequence to the disparate impact claim at issue. Id. at 1486. This statement, however, must be read in context. The fact that there are people outside the class discriminated against by the practice at issue and people inside the class not discriminated against by the practice is of no consequence in a disparate impact case, if it is proved that the members of the class are "disproportionately impacted" in relation to the population as a whole. Id. (emphasis added).
 
 
 18
 Examining the process used by the BPA in Morris' case, the BPA's procedure inherently impacted ten-point veterans in a disproportionate manner, as the district court correctly found. The Rehabilitation Act protects disabled people, however, and not ten-point veterans. Looking at the process as applied solely in Morris' case does not demonstrate that disabled people are inherently impacted in a disproportionate manner. It may be true that most ten-point veterans are disabled and that most disabled people applying for these positions are also ten-point veterans. Morris has not proved this to be the case.
 
 
 19
 Morris may have been able to do so through the use of statistical evidence. Indeed statistical evidence is the crux of most disparate impact cases. See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir.1990) (stating that in order to establish a prima facie case of disparate impact, a " 'plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.' ") (citation omitted); see also United States v. Ironworkers Local 86, 443 F.2d 544, 551 (9th Cir.) (noting that statistics are often "the only available avenue of proof."), cert. denied, 92 S.Ct. 447 (1971). There is no such evidence in this record, and therefore, we cannot say that the BPA's procedure disproportionately impacts disabled people.
 
 B. Disparate Treatment
 
 20
 In a disparate treatment case, the burden of establishing a prima facie case is "not onerous." Texas Dep't of Community Affairs v. Burdine, 101 S.Ct. 1089, 1094, n. 8 (1981). The plaintiff must show that "the employer, after having rejected the plaintiff's application for a job or promotion, continued to seek applicants with qualification similar to the plaintiff's." Watson v. Fort Worth Bank and Trust, 108 S.Ct. 2777, 2784 (1988). The employer can rebut the prima facie showing "simply by producing some evidence that it had legitimate, nondiscriminatory reasons for the decision." Id. In this case, the district court found that Morris was not selected for the position while others who had no record of any handicap were selected and that the BPA produced no evidence of a legitimate, non-discriminatory motive for failing to select Morris. If these findings are correct, Morris should win his case. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2748 (1993) (stating that if the employer has failed in meeting "its burden of production--i.e., has failed to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action ... the court must award judgment to the plaintiff as a matter of law....").
 
 
 21
 The district court's finding that the BPA produced no evidence of a non-discriminatory motive for failing to select Morris was clearly erroneous. Both of the BPA witnesses indicated that the selection process relied on the technical scores of the applicants. Rivers testified that "what we are looking for is technical expertise. So that's why we look at the technical part of it...." According to the testimony, preference was given to veterans, but when choosing between two veterans, the technical scores were determinative. Therefore, the BPA met its burden of production and Morris had to prove that the BPA's alleged reliance on the technical scores was merely a pretext for intentional discrimination. The district court's finding that there was insufficient evidence of intentional discrimination was not clearly erroneous. Morris did not meet his burden of proof.[2]
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Based on this testimony, the district court did not dismiss the case for failure to exhaust administrative remedies
 
 
 [2]
 The trial transcript also indicates that the district court found that Rivers discriminated against Morris in his most recent attempts to obtain permanent employment with the BPA in retaliation for his 1986 discrimination lawsuit. This finding was not included in the written Findings of Fact and Conclusions of Law. The finding indicates that Morris may have been able to recover in this case based on a retaliation claim under the Rehabilitation Act. See 29 C.F.R. Sec. 1614.101(b) (1994); see also Sands v. Runyon, 28 F.3d 1323, 1331 n. 1 (2nd Cir.1994) (recognizing claims based on actions taken by employers in retaliation for filing handicap discrimination claims). Morris, however, did not make this claim in his complaint and does not argue for recovery under a retaliation theory of liability in his brief