**CASTING SUPPLY HOUSE, INC., Plaintiff–Counter–Defendant–Appellee,**

v.

**ELF ATOCHEM NA, INC., Defendant–Counter–Claimaint–Appellant.**

**Docket No. 01–7605.**

United States Court of Appeals, Second Circuit.

May 1, 2002.

Ben M. Krowicki, Bingham Dana LLP, (Ann M. Siczewicz, on the brief), Hartford, CT, for Appellant.

Steven M. Frederick, Wofsey, Rosen, Kweskin & Kuriansky, LLP, (Stephen A. Finn, on the brief), Stamford, CT, for Appellee.

Present McLAUGHLIN, POOLER, B.D. PARKER, Jr., Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Defendant Elf Atochem NA, Inc. ("Atochem") appeals from the April 2, 2001, judgment of the United States District Court for the District of Connecticut (Dominic J. Squatrito, *Judge* ) finding it liable to plaintiff Casting Supply House, Inc. ("Casting Supply") for compensatory and punitive damages. After conducting a three-day bench trial in June and July 2000, the district court held that Atochem's conduct toward Casting Supply constituted intentional misrepresentation and tortious interference with business expectancies and violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a et seq. Atochem, including its predecessors, and Casting Supply were business partners from 1974 until April 30, 1998. Atochem produces zirconium silicate, also known as zircon flour, which is used in the investment casting industry to make molds. Casting Supply distributed Atochem's zircon flour to approximately a dozen large customers. The district court found that the parties had an oral agreement in which Atochem agreed not to sell its products to customers except through Casting Supply. In connection with its sales, Casting Supply compiled comprehensive customer information including client contacts and detailed product specifications. In May 1997, Atochem requested this customer information on the grounds that it needed the information to upgrade its computer system. Casting Supply turned over the information upon receiving Atochem's assurances that it would keep the information confidential. In late 1997, however, Atochem secretly turned over the customer information to Ransom & Randolph, a distributor competing with Casting Supply. On January 26, 1998, Atochem informed Casting Supply that it was terminating their business relationship effective April 30, 1998. After April 30, 1998, Atochem sold zircon flour to Casting Supply's former customers either directly or through Ransom & Randolph. Although Casting Supply was able to obtain zircon flour from alternative sources, most of its former customers did not purchase the material because to do so would require them to perform extensive and time-consuming quality testing.

Casting Supply filed a lawsuit in federal court on July 17, 1998. A bench trial took place and the district court issued a written memorandum of decision dated March 30, 2001. After making findings of fact, the district court dismissed plaintiff's causes of action for specific performance, breach of contract, and intentional misconduct stemming from Atochem's termination of its business relationship with Casting Supply. However, the district court found Atochem liable for intentional misrepresentation and intentional interference with business expectancies because it misled Casting Supply into turning over its customer information in May 1997 on the fraudulent grounds that Atochem would use the information to update its computer system when in reality "defendant sought the information for the purpose of easing its contemplated transition from distribut-

ing its zircon products through the plaintiff to distributing its products directly or through another distributor." The district court dismissed plaintiff's claims under the Connecticut Uniform Trade Secrets Act based on its conclusion that defendant did not misappropriate Casting Supply's customer information because Atochem could have obtained the information. However, the district court also found that defendant's fraudulent misrepresentations in obtaining the information and its subsequent use of the information violated CUTPA's prohibition on the use of unfair or deceptive business practices. The district court awarded Casting Supply a total of $412,400 in compensatory damages, which represented "plaintiff's lost profit due to the defendant's tortious utilization of the plaintiff's customer specification information to sell zircon products to the plaintiff's customers directly or through another distributor rather than through the plaintiff." The district court calculated lost profits for a two-year period because that "period is the reasonable amount of time it could take to get a new zircon product qualified for use in the plaintiff's former investment casting customers' operations." The district court also awarded Casting Supply $412,400 in punitive damages under CUTPA because "the defendant acted in reckless disregard of the injuries that the plaintiff would suffer and actually did suffer as a result of the defendant's tortious conduct." The district court's award included prejudgment interest, attorney's fees and costs. Atochem now appeals.

We review *de novo* the district court's conclusions of law and its application of law to the facts, but we review only for clear error its findings of fact. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 238 (2d Cir.1999). We review the district court's award of remedial relief for abuse of discretion. *Sands v. Runyon,* 28 F.3d 1323, 1327 (2d Cir.1994). Similar-

ly, we review the award of punitive damages under CUPTA for abuse of discretion. *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1040 (2d Cir.1992).

Atochem first contends that the district court drew an erroneous inference of fraud from its factual findings. Specifically, Atochem argues that the record does not prove that in May 1997 defendant intended to use Casting Supply's customer information to bypass Casting Supply in its sale of zircon products rather than simply to update Atochem's computer system. It is well settled that in order to prove intentional misrepresentation, plaintiff must show that defendant made a false representation knowing at the time that it was untrue but with the purpose of inducing the other party to act on it. *Paiva v. Vanech Heights Constr. Co.,* 159 Conn. 512, 271 A.2d 69, 71 (1970). The court may consider the circumstances surrounding defendant's conduct in order to infer his fraudulent intent. *Mitchell v. Mitchell,* 31 Conn.App. 331, 625 A.2d 828, 831 (1993). Here, there was ample evidence in the record, namely the timing of key events, from which the district court could infer that Atochem requested Casting Supply's customer information in May 1997 with the intent of using the information to take advantage of its contemplated termination of its relationship with Casting Supply. There was testimony that Casting Supply provided the information because Atochem promised to use the information only internally and that Casting Supply's "position with [its] customers would always be protected." It was undisputed that Atochem instead turned this information over to Casting Supply's competitor and that the information allowed Atochem to continue supplying Casting Supply's customers after terminating plaintiff's distributorship. Moreover, although Atochem argues that the information was not confi-

dential or proprietary, there is no dispute that Casting Supply provided the information in an immediately usable form to Atochem, thus saving defendant the time and expense of compiling the information itself. Consequently, the district court's finding of intentional misconduct, a finding essential to liability on each of the three causes of action at issue, was not clearly erroneous.

Atochem argues second that the district court abused its discretion in its damages awards because (1) defendant's fraud did not cause plaintiff's lost profits; (2) the amount of the lost profits award was speculative; and (3) it did not support its punitive damages award with factual findings. None of these arguments has merit. In order to recover for defendant's intentional misconduct, plaintiff must show that it suffered injury "that is the direct and proximate result of the alleged misrepresentation" and prove the amount of its damages by a preponderance of the evidence. *Law v. Camp,* 116 F.Supp.2d 295, 308 (D.Conn.2000) (discussing fraudulent misrepresentation); *Conn. Pipe Trades Health Fund v. Philip Morris, Inc.,* 153 F.Supp.2d 101, 109 (D.Conn.2001) (discussing CUTPA). There was ample evidence in the record that plaintiff's damages, which concerned largely its loss of customers to Atochem or the substitute distributor Ransom & Randolph, were a direct result of Atochem's ability to access and utilize the customer information that its May 1997 misrepresentation yielded. Contrary to defendant's contention, the crucial issue here was not defendant's right to terminate the distributorship with Casting Supply. Instead, the district court recognized the damage stemming from defendant's ability to make the transition from Casting Supply's termination virtually seamless by using Casting Supply's customer information. Second, the amount of compensatory damages was reasonable because the district court found

that defendant's conduct set plaintiff's business back by two years, the period in which plaintiff could hope to qualify a substitute source of zircon flour with its customers, and extrapolated from past profits to cover that period. *See Beverly Hills Concepts, Inc. v. Schatz and Schatz, Ribicoff and Kotkin,* 247 Conn. 48, 717 A.2d 724, 736 (1998). Finally, the district court did not abuse its discretion in awarding punitive damages based on defendant's intentional misconduct and the district court's finding of reckless disregard. *See Sir Speedy,* 957 F.2d at 1040.

We have considered all of defendant-appellant's remaining arguments and find them to be without merit.