SIR SPEEDY, INC., Plaintiff-Appellee,

v.

L & P GRAPHICS, INC., Defendant,

Neil H. Blatte and Business Service Centers, Inc., Defendants– Appellants.

No. 513, Docket 91–7699.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1991.
Decided Feb. 24, 1992.

Lawrence G. Greene, Boston, Mass. (Perkins, Smith & Cohen, on the brief), for plaintiff-appellee.

Thomas G. Wolff, Stamford, Conn. (Roberts, Gaillard, Kambas, Cousins & Sweigart, on the brief), for defendants-appellants.

Before FEINBERG, MESKILL, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Neil H. Blatte and his wholly owned corporation Business Services Centers, Inc. (collectively "Blatte"), appeal from so much of a final judgment entered in the United States District Court for the District of Connecticut, following a jury trial before Ellen Bree Burns, *Chief Judge*, as (1) set aside the jury's award to them of $35,000 on their counterclaims against plaintiff Sir Speedy, Inc. ("Sir Speedy"), in connection with its breach of a franchise agreement, and (2) denied defendants punitive damages, attorneys' fees, and costs. On appeal, defendants contend principally (1) that the district court's grant of judgment notwithstanding the verdict ("n.o.v.") was premised on both an erroneous legal premise and a view of the evidence that did not meet the appropriate standard, (2) that under California law they were entitled to an award of attorneys' fees as the prevailing party in the litigation, and (3) that under Connecticut law they were entitled to recover punitive damages. For the reasons below, we affirm the denial of punitive damages but reverse the granting of judgment n.o.v. and the denial of costs and attorneys' fees.

## I. BACKGROUND

Sir Speedy is a nationwide franchisor of printing and document reproduction centers. From November 1979 to June 1985, Blatte was a Sir Speedy franchisee. The events leading to the present suit by Sir Speedy and counterclaims by Blatte, viewed in the light most favorable to defendants, were as follows.

### A. *The Beginning and End of the Franchise Relationship*

In 1979, Blatte was interested in setting up a business in Connecticut. He saw an advertisement for Sir Speedy printing franchises and sought additional information. After receiving promotional materials, Blatte met with a Sir Speedy representative in October 1979 to discuss the costs and potential benefits of becoming a Sir Speedy franchisee. As discussed in greater detail in Part II.A. below, during that meeting Sir Speedy gave Blatte two documents describing the financial performances of its printing centers, stating that the documents reflected what Blatte could expect to earn if he purchased a franchise.

In November 1979, the parties entered into a 15-year franchise agreement. Blatte paid Sir Speedy $20,000 as an initial franchise fee and $32,000 for equipment. In addition, he was to pay Sir Speedy each week 5% of his printing center's gross sales as royalties. Under certain circumstances, Blatte could also be required to pay up to $100 per week to help defray the cost of Sir Speedy's system-wide advertising. The franchise agreement required Sir Speedy to assist Blatte in, *inter alia*, acquiring the necessary equipment, training, and location to start his business; it was also to provide a "continuing assistance program which shall include consulting and assistance by field representatives, accounting and marketing assistance, [and] advising the Franchisee of new developments and techniques in the printing and reproduction industry." (Franchise agreement ¶ 3h.)

After attending a two-week Sir Speedy training program in California, Blatte opened his Sir Speedy printing center in Wilton, Connecticut, in March 1980. He operated the franchise for five years, with results never rising above the mediocre. In 1983, Sir Speedy brought suit against Blatte for unpaid royalties under the franchise agreement. That suit was settled in March 1985. As part of the settlement, Blatte signed a promissory note in the amount of $16,000 ("March 1985 note"), representing his past royalty obligations.

Immediately following the settlement, Sir Speedy invoked the advertising clause of the franchise agreement and demanded that Blatte begin paying weekly advertising fees. Blatte refused to pay, contending that the pre-conditions to that obligation had not been met and that the demand was made in bad faith, given Sir Speedy's failure to mention such fees in the just-ended

settlement negotiations. After discussions, Blatte left the Sir Speedy system on June 1, 1985.

### B. *The Present Lawsuit and the Proceedings Below*

In July 1986, Sir Speedy commenced the present breach-of-contract action against Blatte, alleging, *inter alia,* that Blatte had (1) failed to make the required payments on the March 1985 note, (2) failed to pay royalties, (3) failed to pay the demanded advertising fees, and (4) discontinued operation of the franchise in June 1985. By answer filed on August 26, 1986, Blatte contended that his assent to the March 1985 settlement agreement had been procured by fraud and that breaches of contract by Sir Speedy excused him from further performance of the franchise agreement. He counterclaimed for breach of contract, fraud, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen. Stat. § 42–110a *et seq.* (1987), alleging, *inter alia,* that Sir Speedy had breached both the franchise agreement and the March 1985 settlement agreement by failing to provide him with the promised business assistance and by improperly demanding advertising payments immediately following the settlement. He claimed that Sir Speedy's failure to provide the services and assistance promised in the franchise agreement prevented his franchise from realizing reasonably expected financial returns.

Following trial, the jury returned a special verdict, finding in favor of Sir Speedy in part and in favor of Blatte in part. The jury found that Blatte had breached the settlement agreement by failing to make the required payments on the March 1985 note, and that he was liable for the unpaid balance of that note, plus interest. It also found that Blatte had breached the franchise agreement by failing, without justification, to make royalty payments from March 1985 until he ceased operation on June 1, 1985, and that he was liable to Sir Speedy for 5% of his gross sales during that period. The jury found, however, that Blatte had been justified in discontinuing the operation of his Sir Speedy franchise. It also found that in connection with the 1985 settlement, Sir Speedy had made materially false representations on which Blatte had relied, and that this excused him from complying with Sir Speedy's demand for advertising payments.

Deciding in favor of Blatte on his principal counterclaims, the jury found that between August 1980 and March 1985, Sir Speedy (1) had breached its obligations under the franchise agreement to provide Blatte with, *inter alia,* a proprietary system of printing and a continuing assistance program, and (2) had engaged in unfair or deceptive trade practices. The jury found that this conduct had caused Blatte damages in the amount of $35,000.

Following the jury's verdict, Sir Speedy, which had moved for a directed verdict during trial, renewed its motion. In a Ruling on Motion for Directed Verdict on Counterclaim, dated November 26, 1990 ("Verdict Ruling"), the district court granted Sir Speedy judgment n.o.v. on the jury's award of $35,000. The court found that certain Sir Speedy documents on which Blatte had relied at trial to show the level of profits he reasonably expected to achieve were inadmissible because they predated the statute-of-limitations period applicable to his claims and in any event were insufficient. Eliminating these documents, the court concluded that "there was no evidence upon which the jury could calculate damages with the reasonable degree of certainty." Verdict Ruling at 2. In a later decision, the court denied Blatte's request for punitive damages under CUTPA, finding that the "evidence d[id] not support a conclusion that Sir Speedy engaged in a reckless indifference to the rights of Blatte or in any intentional or wanton violation of those rights." Ruling on Pending Motions, dated June 26, 1991, at 3–4. The court also denied both parties' requests for costs and attorneys' fees.

This appeal followed.

## II. DISCUSSION

On appeal, Blatte contends principally that the district court erred (1) in excluding two documents on which he relied for proof

of damages, and (2) in failing to view the trial evidence in the light most favorable to him as the party opposing judgment n.o.v. In addition, he pursues his requests for punitive damages, costs, and attorneys' fees. Though we reject Blatte's challenge to the denial of punitive damages, his other claims have merit.

### A. *The Adequacy of Blatte's Proof of Damages*

Blatte claimed that, as a result of Sir Speedy's failure to provide him with, *inter alia,* the proprietary printing system and continuing assistance it was obligated to provide him under the franchise agreement, he lost a total of $105,000 in profits for the period 1981–1984. In support of this claim, he introduced, *inter alia,* two documents that he had received from Sir Speedy in 1979 prior to entering into the franchise agreement. One, entitled "Sir Speedy Instant Printing Centers Pro Forma Statement of Operations" and admitted at trial as defendants' Exhibit W, projected the average monthly sales, expenses, and profits of Sir Speedy franchises at various stages of maturity during the course of a 15–year franchise agreement. Blatte testified that the Sir Speedy representative told him that Exhibit W showed the profits of a typical Sir Speedy center.

The other Sir Speedy document on which Blatte placed principal reliance, entitled "Sir Speedy, Inc. Statement of Average Sales and Estimated Expenses" and admitted at trial as defendants' Exhibit V, set forth the average sales and expenses of Sir Speedy franchises for 1978 and estimated sales and expenses for 1979. This document stated that its projections were not applicable to franchises in any of 14 listed states; Connecticut was not among them. The foot of the document also bore a statement that the projections were merely estimates and "should not be considered as the actual or potential sales, profits, or earnings that will be realized by any specific franchisee." Blatte testified that the Sir Speedy representative nonetheless told him "this is what you might expect if you were to become a Sir Speedy franchise." (Trial Transcript ("Tr.") 416.)

In calculating his lost profits for each of the years from 1981 through 1984, Blatte relied in particular on Exhibit W, using Sir Speedy's pro forma figures representing net income before debt service, and then subtracting his actual net income, before debt service, as derived from his income tax returns. The Sir Speedy projections exceeded Blatte's actual performance during this four-year period by a total of approximately $110,000. After deducting the royalties that would have been payable to Sir Speedy on the lost sales, Blatte calculated that his lost profits totaled approximately $105,000. In an effort to show the reasonableness of using the figures given him in 1979, Blatte also introduced a 1983 Sir Speedy communication to franchisees, admitted as defendants' Exhibit AJ, which showed actual performance figures for 1982; those results exceeded the Sir Speedy 1979 projections shown in Exhibit V.

In its posttrial Verdict Ruling setting aside the jury's award of lost profits, the court ruled that Blatte could not rely on Exhibits V and W because they predated the applicable statute-of-limitations period and in any event were insufficient. We disagree with both rulings.

### 1. *The Statute-of-Limitations Ruling*

In ruling that Blatte's reliance on the two 1979 Sir Speedy documents was barred by the statute of limitations, the district court stated, in pertinent part, as follows:

[T]he statute of limitations acts to bar much of the evidence the defendant relied on to establish damages. . . .

. . . .

. . . The earnings projections relied on by the defendant, Exhibits V and W, were given to the defendant prior to August, 1980. Any claim that the defendant had as to misrepresentations in those forms expired before August, 1986. . . .

Exhibit V, captioned "Statement of Average Sales and Estimated Expenses" is a report of sales, gross profit, and oper-

ating expenses for 1978, with estimates for 1979.... [E]stimates for 1979 cannot be included in the award for damages sustained after August 26, 1980.

Verdict Ruling at 2–3.

■ This ruling miscast the function of the limitations period. A statute of limitations is a statute of repose, whose function is to bar stale claims, *i.e.,* claims asserted after "evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). As to a timely claim, such a statute does not operate to bar the use of a document that predates the commencement of the limitations period but that is relevant to events during the period. *See, e.g., Black Law Enforcement Officers Association v. City of Akron,* 824 F.2d 475, 482–83 (6th Cir.1987); *see also United States v. Ashdown,* 509 F.2d 793, 798 (5th Cir.) ("The statute of limitations is a defense ..., not a rule of evidence.... [It] has no bearing on the admissibility of evidence."), *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975). A suggestion that the evidence is too old goes to its relevance and to its weight. Any question as to the weight to be accorded a relevant document is a matter for the jury. *See, e.g., Smith v. Lightning Bolt Productions,* 861 F.2d 363, 367 (2d Cir.1988).

In light of Blatte's testimony that the Sir Speedy representative gave him Exhibits V and W and told him they were representative of what he could expect to earn as a Sir Speedy franchisee, the documents were relevant. The ruling that they could not be used to support the calculation of lost profits because they predated the statute-of-limitations period was erroneous.

### 2. The Sufficiency Ruling

■ Two sets of principles inform our review of the district court's ruling that, as proof of Blatte's lost profits, Exhibits V and W were insufficient. One set establishes the degree of certainty with which a claimant must prove damages; the other establishes the standard for ruling on a motion for directed verdict or judgment n.o.v.

■ In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. He need not prove the amount of loss with mathematical precision; but the jury is not allowed to base its award on speculation or guesswork. Lost profits, though typically "difficult to prove with exactitude," may be recovered "to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty." *Gargano v. Heyman,* 203 Conn. 616, 621, 525 A.2d 1343, 1346 (1987); *see also Conaway v. Prestia,* 191 Conn. 484, 493–95, 464 A.2d 847, 852–53 (1983); *Burr v. Lichtenheim,* 190 Conn. 351, 460 A.2d 1290, 1295–96 (1983). Where a defendant's own misconduct has prevented a more precise computation of damages,

> the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act upon probable and inferential, as well as direct and positive proof."
> ... Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim.

*Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946). In estimating damages, a claimant may rely on reports and projections made by the wrongdoer itself. *See Care Travel Co. v. Pan American World Airways,* 944 F.2d 983, 994 & n. 7 (2d Cir.1991). The fact that the precise amount of damage may be difficult to ascertain is not fatal to the claim, and "[d]oubts are generally resolved against the party in breach," Restatement (Second) of Contracts § 352 comment *a* (1981).

■ In ruling on a motion for a directed verdict or for judgment n.o.v., the district court is required to deny the motion unless, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the

weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970) (judgment n.o.v.); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524, at 541–42 (1971) (standard for assessing sufficiency of evidence to create issue of fact for jury is the "same whether it arises in the procedural context of a motion for directed verdict or of a motion for judgment notwithstanding the verdict.").

■ The same framework governs appellate review of the granting of a motion for directed verdict or judgment n.o.v. *See, e.g., Powell v. Gardner*, 891 F.2d 1039, 1043 (2d Cir.1989); *Konik v. Champlain Valley Physicians Hospital Medical Center*, 733 F.2d 1007, 1013 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). If, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor, we must overturn the directed verdict or judgment n.o.v. *See Powell v. Gardner*, 891 F.2d at 1043.

In setting aside the jury's award to Blatte of $35,000 for lost profits, the district court stated that Blatte relied on Exhibits V and W as "present[ing] a definitive earnings amount" for his franchise, and it concluded that

> [t]he court finds that neither exhibit V, W, or AJ presented reliable evidence for a jury to accept in determining damages for the defendant's franchise.
>
> . . . .
>
> ... The defendant failed to establish ... that the figures represented in Exhibit W accurately reflect the sales potential of his particular franchise. Exhibit W is not dated, nor does it specify any region....
>
> [S]ales vary by region and, presumably, by the location of the individual franchise. Whereas a sales statement for similar businesses in the area, or in similar neighborhoods, might provide a means of determining lost profits with a

reasonable degree of certainty, exhibit W does not meet the standard of requisite certainty.

Verdict Ruling at 3–4. In sum, the court agreed with Sir Speedy's argument that Blatte had "failed to present credible evidence to the jury that would permit the jurors to ascertain damages with the requisite reasonable degree of certainty." *Id.* at 1. We have several difficulties with the court's findings.

First, the court plainly did not view Exhibits V and W in the light most favorable to Blatte. There was no indication that Sir Speedy had believed these documents were not pertinent to the likely future earning ability of a franchise purchased by Blatte; presumably Sir Speedy had given them to Blatte in the prepurchase negotiations precisely because they were pertinent.

Second, the court appears to have ignored Blatte's testimony that the Sir Speedy representative told him that the profits shown on Exhibits V and W were typical and were what he could expect if he purchased a franchise. There was no contrary testimony as to what Blatte had been told, as the Sir Speedy representative who attended the meeting was not called as a witness. The matter of whether or not Blatte's testimony should be believed was a question for the jury; the jury, awarding Blatte damages, obviously decided to accept it. The court was not entitled to second-guess this assessment.

Third, though it is true that, as the court stated, Exhibit W on its face bore neither a date nor geographic limitation, this did not affect its admissibility. There was no question that the document was authentic; nor was there any question that it had been given to Blatte in 1979. Any lack of geographic specificity went solely to the document's weight, which again was a matter solely within the province of the jury. Further, since Sir Speedy gave the document to Blatte knowing that he wanted to establish his franchise in Connecticut, the jury could appropriately discount the fact that Exhibit W itself lacked geographic specificity. This is especially so in light of the fact that, along with Exhibit W, Blatte was

given Exhibit V, which omitted Connecticut from the list of states to which its projections were expressly not applicable and thereby implied that Sir Speedy meant its projections to apply to franchises in Connecticut.

Further, though Blatte used figures shown on Exhibit W as the basis for his calculation, and the court not unfairly characterized him as attempting to "present a definitive earnings amount," the jury was entitled to give the document such weight as it chose. Neither Blatte's argument nor the fact that the documents were relevant meant that the jury was required to view the documents' contents as definitive. Indeed, the indication that the figures represented averages meant that some results would have been higher, some lower. The fact that the figures were given by Sir Speedy as a presumably good faith indication of what Blatte could earn if he purchased a franchise, and the evidence that in at least one region during Blatte's period of operation the actual franchise performances out-paced Sir Speedy's projections, meant the Sir Speedy documents relied on by Blatte provided the jury with a reasonable basis for inferring, without speculation, a range of profits that could reasonably have been expected. It was up to the jury to determine, on the basis of all it saw and heard at trial, whether Blatte, had he been given all the assistance due him under the franchise agreement, would have been a better than, worse than, or precisely average performer. The jury's award of damages at the lower end of the scale, awarding him not $105,000 but only $35,000, was certainly within reason.

In sum, the documents given to Blatte by Sir Speedy, and Blatte's testimony as to what the Sir Speedy representative told him, were properly admitted in evidence, and the evidence was sufficient to require the court to submit the question of lost profits to the jury. The jury was properly instructed as to the standard it was to apply in assessing Blatte's proof of damages, and there is no reason to believe that it ignored the court's instructions. When the evidence is viewed in the light most favorable to Blatte, the jury's verdict was sufficiently supported and could not properly be disturbed.

### B. *Punitive Damages*

 Blatte's contention that the district court erred in denying his request for punitive damages does not require extended discussion. Under CUTPA, which governs the question of the availability of punitive damages in the present case, *see* Conn. Gen.Stat. §§ 42–110a and b, a plaintiff who has established a violation of CUTPA may recover punitive damages if the court finds that the defendant's conduct was recklessly indifferent, intentional and wanton, malicious, violent, or motivated by evil, *Gargano v. Heyman,* 203 Conn. at 622, 525 A.2d at 1347. The award of such damages rests in the discretion of the court, *see* Conn.Gen. Stat. § 42–110g(a), and the denial of such an award is not to be disturbed on appeal "unless the abuse is manifest or injustice appears to have been done," *see, e.g., Gargano v. Heyman,* 203 Conn. at 622, 525 A.2d at 1347.

In denying Blatte's motion for punitive damages, the district court concluded that Sir Speedy's misconduct, though it violated CUTPA and was not negligible, did not meet this standard. Our review of the record persuades us that this ruling was not an abuse of discretion.

### C. *Attorney's Fees and Costs*

 Section 9(e) of the franchise agreement provided that in the event of litigation to enforce the terms of the agreement, "the prevailing party shall be entitled to reasonable costs and attorney fees." Under California law, which the parties agree governs the interpretation of the franchise agreement, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." Cal.Civ.Code § 1717(b)(1) (1985 & West Supp.1992). If fees are recoverable under the agreement at all, they are recoverable for services at both the trial level and the appellate level. *See Morcos v. Board of Retirement,* 51 Cal.3d 924, 275

Cal.Rptr. 187, 189–90, 800 P.2d 543, 545–46 (1990).

The jury's award to Sir Speedy comprised 5% of Blatte's gross sales for the period March 19 to June 1, 1985, and the unpaid balance of the $16,000 March 1985 note, plus interest. After setting aside the jury's award of lost profits to Blatte, the district court denied both sides' requests for costs and fees on the ground that the balance of recoveries was "fairly even." With this Court's reinstatement of the jury's $35,000 award to Blatte, Blatte plainly becomes the prevailing party under the applicable law. Accordingly, defendants are entitled to costs and attorneys' fees.

## CONCLUSION

The judgment of the district court is affirmed to the extent that it denied punitive damages, and is reversed to the extent that it set aside the jury's verdict awarding defendants $35,000 in lost profits and denied defendants attorneys' fees and costs. The matter is remanded for entry of a new judgment that includes awards to defendants of $35,000 in lost profits and of reasonable costs and attorneys' fees in accordance with the foregoing.