[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10064

_____

MATTHEW REEVES,

Plaintiff-Appellee,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cv-00027-RAH

_____

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

JORDAN, Circuit Judge:

The Commissioner of the Alabama Department of Corrections (the Commissioner or the ADOC) and the Warden of Holman Correctional Facility (collectively, the defendants) appeal the district court's order granting Matthew Reeves' motion for a preliminary injunction under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. They also seek a stay of the district court's order. Following oral argument and a review of the record, we discern no abuse of discretion. We therefore affirm the district court's grant of preliminary injunctive relief and deny the motion for a stay.

## I

Mr. Reeves, who was sentenced to death in Alabama for murder, *see Reeves v. State*, 807 So. 2d 18, 23–24 (Ala. Crim. App. 2000), is presently incarcerated at Holman Correctional Facility. He is scheduled to be executed by lethal injection on January 27, 2022.[1]

---

[1] We granted habeas relief to Mr. Reeves on an ineffective assistance of counsel claim related to sentencing, but the Supreme Court reversed. *See Reeves v. Comm'r, Ala. Dep't of Corr.*, 836 F. App'x 733 (11th Cir. 2020), *reversed sub nom.*, *Dunn v. Reeves*, 141 S. Ct. 2405 (2021).

### A

Alabama Act 2018-353 went into effect on June 1, 2018. As the district court explained, the Act "grants death row inmates a single opportunity to elect that their execution be carried out by . . . nitrogen hypoxia, in lieu of Alabama's default method, lethal injection." D.E. 83 at 5 (internal citations omitted). *See* Ala. Code § 15-18-82.1(a). Inmates like Mr. Reeves, who were sentenced to death prior to the Act's effective date, had until June 30, 2018, to elect nitrogen hypoxia in writing. *See* § 15-18-82.1(b)(2). The failure to do so operates as waiver of that method of execution under Alabama law. *See id.*

At some point between June 26, 2018, and the statutory deadline of June 30, 2018, Cynthia Stewart—who was then the Warden at Holman—obtained an election form created by the Federal Defenders for the Middle District of Alabama and had it distributed by Captain Jeff Emberton to every Holman death row inmate. She did so at the "direction of someone above her at the ADOC." D.E. 83 at 7. Inmates who wanted to elect that their execution be by nitrogen hypoxia rather than lethal injection were to sign, date, and return the form. *See* D.E. 70-5. Mr. Reeves made no election.

On January 10, 2020, more than 22 months before his execution date was set, Mr. Reeves filed suit against the Commissioner and the Warden, alleging that the ADOC and Holman were violating his rights under the ADA in their enforcement and implementation of Ala. Code § 15-18-82.1(b)(2). Mr. Reeves alleged that

"with IQ scores in the upper 60s and low 70s, his general cognitive limitations and severely limited reading abilities rendered him unable to read and understand the election form without assistance." D.E. 83 at 8. The Commissioner and the Warden, he asserted, failed to provide him—an intellectually disabled inmate—with a reasonable accommodation under the ADA.[2]

## B

On November 4, 2021, before his execution date was set, Mr. Reeves filed a motion for a preliminary injunction requesting that the district court "enjoin the ADOC from executing him by any method other than nitrogen hypoxia while his ADA claim remain[ed] pending." D.E. 83 at 9–10 (citing D.E. 27 at 2). Following supplemental briefing and an evidentiary hearing, the district court issued an order setting out its findings of fact and granting Mr. Reeves' motion. The district court preliminarily enjoined the ADOC from executing Mr. Reeves by any method other than nitrogen hypoxia. *See id.* at 37.

First, the district court determined that Mr. Reeves had Article III standing to assert his ADA claim. The district court cited to our unpublished decision in *Smith v. Commissioner, Alabama Department of Corrections*, No. 21-13298, 2021 WL 4817748, at *2–4 (11th Cir. Oct. 15, 2021) (concluding that an Alabama death row inmate with a similar ADA claim had standing), and "[saw] no

---

[2] Mr. Reeves also asserted an Eighth Amendment claim, which the district court dismissed. That claim is not before us in this appeal.

reason to depart from that [case]." D.E. 83 at 11. The court concluded that "[Mr.] Reeves, like [Mr.] Smith, ha[d] alleged an injury, established causation, and his alleged injury [was] redressable by an order from th[e c]ourt." *Id.* at 11–12.

Second, the district court addressed Mr. Reeves' motion for a preliminary injunction. The court concluded that Mr. Reeves showed that he was substantially likely to succeed on the merits by proving that "(1) he is a qualified individual with a disability; (2) he lacked meaningful access to the benefits of a public entity's services, programs, or activities by reason of his disability; and (3) the public entity failed to provide a reasonable accommodation for his disability." *Id.* at 14 (citations omitted). We set out the district court's analysis in detail below.

With respect to the first element of the ADA claim, the district court found that the record contained evidence that Mr. Reeves is disabled "under the broad construction of the ADA." *Id.* at 15. Neurological testing found Mr. Reeves' IQ to be between 68 and 71. Additionally, one expert previously opined that Mr. Reeves was "essentially illiterate" and that it was "quite apparent" that he had never adequately learned to read or write. *See* D.E. 27-28. And a state expert had concluded that Mr. Reeves' reading and spelling were at a 5th grade level.

Dr. Kathleen Fahey, a speech pathologist retained by Mr. Reeves, also testified that his "language competency was that of someone between the ages of 4 and 10." D.E. 83 at 16. She determined that Mr. Reeves could read at a 4th grade level but could

only comprehend at a 1st grade level. The election form, which she ran through software programs designed to calculate the readability of the language utilized, "required an 11th grade reading level to be understood." *Id.* She testified that, in her professional opinion, Mr. Reeves was unable to comprehend the election form because of this "language disorder." *See* D.E. 78 at 38–39. The defendants failed to contradict Dr. Fahey's opinions, and the district court found that "[t]he evidence presented at this stage demonstrate[d] that [Mr.] Reeves'[ ] cognitive impairments and low intellectual functioning affect several major life activities, such as reading, writing, and comprehension, placing [Mr.] Reeves under the ambit of the ADA." D.E. 83 at 18.

As to the second element of the ADA claim, the district court found that Mr. Reeves was a qualified individual because Holman implemented a program, service, or activity (as broadly defined under the ADA) from which he was excluded due to the defendants' failure to provide an accommodation. Captain Emberton, at then-Warden Stewart's direction, distributed over one hundred copies of the election form with over one hundred envelopes, giving one to each death row inmate. Captain Emberton also made an announcement on each tier where death row inmates are housed. "His only criterion [for distribution of the election form], and thus the only apparent eligibility requirement for this service, was whether an inmate was on death row at Holman at the time of the form's distribution." *Id.* at 21. As a death row inmate in June of 2018, Mr. Reeves was "clearly eligible to receive an election form

and participate in the benefits tied to the form and its distribution." *Id.*

In addition, the district court determined that the form provided benefits, including notice of the new method of execution, the ease and ability of electing this new method, the avoidance of the "substantially painful" lethal injection, and the reservation of an inmate's right to challenge the constitutionality of the new execution protocol. *See id.* at 23. Mr. Reeves was denied meaningful access to these benefits because of his disability. Despite the ADOC's contentions, Captain Emberton's announcement was insufficient to constitute meaningful access to the form's benefits because there was no evidence that the explanation "was directed at or heard by [Mr.] Reeves." *Id.* at 25. Indeed, Captain Emberton testified that inmates who were not present or were sleeping would not have received his explanation. The court noted that although § 15-18-82.1 did not require the ADOC to distribute the election form, in voluntarily undertaking to do so the ADOC "imposed upon itself a duty to ensure that all inmates were able to meaningfully access [the] benefits tied to that service." *Id.* at 24.

On the third element of the ADA claim, the district court found that the defendants failed to provide Mr. Reeves with a reasonable accommodation, and his need for an accommodation was open and obvious. The defendants were aware of Mr. Reeves' low IQ scores given prior litigation on the matter. And numerous documents in Mr. Reeves' prison file contained notations by ADOC staff that he had "poor communication" and "trouble processing

information." *Id.* at 30 (citing D.E. 42-1 at 126). ADOC staff also noted that Mr. Reeves was "fragile and easily confused" and "may have limited intel[lectual] abilities." *Id.* (citing D.E. 42-1 at 126). A prison mental health evaluation, for example, noted that Mr. Reeves "possibly cannot read." *Id.* (citing D.E. 27-37). Numerous other documents revealed that prison staff at Holman knew of Mr. Reeves' disability, specifically his low reading level and comprehension abilities. "[M]ost informative," explained the court, was a 2015 inmate request slip from Mr. Reeves asking that some documents be read to him because he did not understand what they were. *See id.* at 31. In combination, these records "support[ed] [Mr.] Reeves'[ ] contention that the ADOC should have known [he] required a reasonable accommodation to utilize the election form." *Id.* at 32.

Finally, the district court evaluated the remaining preliminary injunction factors. On balance, the court concluded that the equities favored Mr. Reeves, particularly given the ADOC's representation that a final nitrogen hypoxia protocol was going to be ready soon. *See id.* at 36 (citing D.E. 78 at 219). The court ruled that Mr. Reeves "established his right to a preliminary injunction that prevents the ADOC from executing him by any method other than nitrogen hypoxia before his ADA claim can be decided on its merits." *Id.* at 36–37.

The defendants appealed and moved for a stay of the district court's order. We expedited briefing and heard oral argument on January 21, 2022.

## II

The defendants contend that Mr. Reeves does not have Article III standing to pursue his ADA claim because his injury is not redressable. Although the defendants challenge only redressability, we address Article III standing in full to ensure that the case is justiciable. Exercising plenary review on this issue, *see, e.g., Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021), we disagree with the defendants. *See Smith*, 2021 WL 4817748, at *2–4 (concluding that an Alabama death row inmate with a similar ADA claim had standing).

We begin our analysis with the recognition that we "must not confus[e] weakness on the merits with absence of Article III standing." *Arizona State Legislature v. Arizona Ind. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (citation and internal quotation marks omitted). Indeed, we "must be careful not to decide the questions on the merits for or against [Mr. Reeves], and must therefore assume that on the merits [he] would be successful in [his ADA] claim[ ]." *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) (citation omitted). *See also Warth v. Seldin*, 422 U.S. 490, 502 (1975) (assuming the validity of the plaintiff's claims in determining the question of standing); *Moody v. Holman*, 887 F.3d 1281, 1286 (11th Cir. 2018) ("[W]e . . . have endeavored to treat the concepts of [standing and the merits] distinctly[.]").

To have Article III standing, a plaintiff must show (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Mr. Reeves, the party

invoking federal jurisdiction, bears the burden of establishing each of these elements. *See id.* at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citations omitted).

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing. *See id.*; *Moody*, 887 F.3d at 1286. That is because "we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.[3]

To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). An injury is particularized when it "affects the plaintiff in a personal and individual way," and concrete if it is "real, and not abstract." *Sierra*, 996 F.3d at 1113. In the context of a preliminary injunction, a plaintiff must adequately demonstrate "that a future injury is imminent." *Id.* (emphasis omitted). This entails a showing "that there is a sufficient likelihood that [the plaintiff] will be affected by the allegedly unlawful conduct in the future." *Id.*

---

[3] In addition to the pleadings, where appropriate we consider the evidence presented to the district court in the preliminary injunction proceedings. *See, e.g., Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 n.22 (1979).

At this stage of the proceedings, Mr. Reeves has demonstrated an injury in fact. He alleges in his amended complaint that lethal injection is significantly more painful than nitrogen hypoxia. *See* D.E. 21 at ¶¶ 59, 62–63, 72, 79, 81–82. And he alleges that, as a result of the defendants' violation of the ADA, he will be executed by lethal injection, a more painful method he would not have chosen if he understood the election form. Alabama gave Mr. Reeves the right to choose his method of execution, *see* Ala. Code § 15-18-82.1(a), and by distributing the form the ADOC provided prisoners an easy way to do so. Assuming Mr. Reeves will succeed on his ADA claim, he was unable to use the form due to the defendants' failure to provide him a reasonable accommodation.

We therefore conclude that Mr. Reeves has satisfied the injury in fact element of Article III standing. And that injury is imminent because his execution is set to take place this week by a more painful method he would not have chosen. *Cf. Baze v. Rees*, 553 U.S. 35, 53 (2008) ("It is uncontested that, failing a proper dose of sodium thiopental [the first drug in a three-drug protocol] to would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and of pain from [the injection of] potassium chloride.").

Because Mr. Reeves has demonstrated an injury in fact that is imminent, we proceed to the causation element. Causation requires Mr. Reeves to show that his injury (the impending execution by lethal injection, a method he would not have chosen) is "fairly

traceable" to the challenged action (i.e., the failure of the defendants to offer him a reasonable accommodation as required by the ADA). *See California v. Texas*, 141 S. Ct. 2104, 2113–14 (2021); *Lujan*, 504 U.S. at 560.

We start with some background principles about causation. First, "[p]roximate cause is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Second, there is no need for a plaintiff to "demonstrate a connection between the injur[y] [he] claim[s] and the . . . rights being asserted." *Duke Power Co. v. Carolina Envt'l Study Grp.*, 438 U.S. 59, 78 (1978) (rejecting the argument that injuries that do not "directly relate[ ] to the constitutional attack" cannot "supply a predicate for standing").

Assuming—as we must—the validity of his ADA claim, Mr. Reeves has sufficiently established causation. Mr. Reeves alleged that the defendants' failure to offer him a reasonable accommodation under the ADA for a program, service, or activity prevented him from receiving the benefit of choosing nitrogen hypoxia as a method of execution and thereby "avoiding a substantially painful execution via lethal injection." D.E. 21 at ¶ 72. In addition, Mr. Reeves alleged that he is a qualified individual with a disability, i.e., an intellectual disability, and that he was therefore "unable to personally make" the election in favor of execution by nitrogen

hypoxia in the manner specified by Alabama law. *See id.* at ¶¶ 29–36, 70.[4]

Mr. Reeves alleged in his amended complaint that the defendants were responsible for developing and implementing the procedures governing the execution of death-sentenced inmates in Alabama, and that the Commissioner has the authority to alter, amend, or make exceptions to these procedures. *See id.* at ¶¶ 7–8. In their answer, the defendants admitted these allegations. *See* D.E. 52 at ¶¶ 7–8. Moreover, the defendants' answer and record evidence included concessions regarding the scope of their roles in connection to Mr. Reeves' alleged ADA violation. If we assume that Mr. Reeves will succeed on his ADA claim, he has sufficiently demonstrated that his injury is traceable to, or caused by, the defendants' violation of the ADA.

Having concluded that Mr. Reeves has satisfied the first two elements of standing, we proceed to the third and final element: redressability. Redressability simply requires a plaintiff to seek a "remedy that is likely to redress [the] injury" which is fairly traceable to the challenged conduct. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). The remedy need not be complete or relieve every injury alleged in order to satisfy Article III standing. *See id.* at 801 ("[T]he ability to effectuate a partial remedy satisfies

---

[4] To the extent that the defendants challenge the district court's finding that Mr. Reeves is a qualified individual under the ADA, we address that contention later.

the redressability requirement.") (citation and internal quotation marks omitted); *Moody*, 887 F.3d at 1287 ("Article III . . . does not demand that the redress sought by a plaintiff be complete."); 35A C.J.S. Fed. Civ. Proc. § 67 (2021) ("To meet the redressability standing requirement, a plaintiff must show that a favorable judgment will relieve a discrete injury although it need not relieve his or her every injury.").

Mr. Reeves has successfully established redressability for his claimed injury. He requests that the district court require the defendants to re-open the 30-day statutory opt-in period and allow him an opportunity to understand and complete the election form with the benefit of the accommodation he was previously denied. This would allow him to choose nitrogen hypoxia as his method of execution.

The defendants counter that Alabama law does not grant them the power to re-open the election period. Given the language of Ala. Code § 15-18-82.1, they contend that they "have no official power to ignore, alter, or amend" the 30-day election window. *See* Appellants' Br. at 20–24. They also assert that Mr. Reeves has not shown that his requested accommodation is reasonable under the ADA. *See id.* at 23.

The defendants' arguments as to redressability are untenable for a number of reasons. We set these reasons out below.

First, as noted earlier, in evaluating whether Mr. Reeves has standing we must assume that his ADA claim is valid on the merits.

*See, e.g., Culverhouse*, 813 F.3d at 994. "If Alabama were correct, then a plaintiff who ultimately loses on the merits (and by definition did not have a substantive right to relief) would never have had standing to pursue his or her claims in the first place. The law does not countenance, much less demand, such a result." *Moody*, 887 F.3d at 1287. Moreover, arguments about the authority of a court to fashion certain relief or the legal availability of such relief go to the merits, and not justiciability. *Cf. Chafin v. Chafin*, 568 U.S. 165, 174 (2013) (addressing mootness: "Ms. Chafin argues that this case is moot because the District Court lacks the authority to issue a re-return order either under the Convention or pursuant to its inherent equitable powers. But that argument—which goes to the meaning of the Convention and the legal availability of a certain kind of relief—confuses mootness with the merits.").

Second, the defendants have admitted that they have the authority to alter, amend, or make exceptions to the procedures governing the execution of death-sentenced prisoners in Alabama. *See* D.E. 52 at ¶ 8 (admitting the allegation in the amended complaint that the Commissioner "has the authority to alter, amend, or make exceptions to the protocol and procedures governing the execution of death-sentenced prisoners in the State of Alabama"). "[T]he general rule [is] that a party is bound by the admissions in his pleadings," *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines,*

*Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (citations omitted), and we see no reason why that general rule should not apply here.[5]

Third, it is hornbook federal law that the authority of a "federal court to fashion effective relief for a violation of federal law is not limited by what state law permits." *Smith*, 2021 WL 4817748, at *4. *See Bd. Of Comm'rs of Jackson Cnty. v. United States*, 308 U.S. 343, 350 (1939) ("Nor are the federal courts restricted to the remedies available in state courts in enforcing . . . federal rights."). The defendants offer no support for the proposition that Alabama law limits the remedies available to the district court for a violation of the ADA.

In sum, "a favorable decision" from the district court "would amount to a significant increase in the likelihood that [Mr. Reeves] would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303–04 (11th Cir. 2011). Because this is all that is required to show redressability, Mr. Reeves has satisfied this element as well.

## III

To obtain a preliminary injunction, Mr. Reeves had to establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury would result unless the injunction were issued; (3) that the threatened injury to him outweighs whatever damage the

---

[5] Because of their admission, the defendants' reliance on *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1203–06 (11th Cir. 2021), is misplaced.

proposed injunction might cause the defendants; and (4) that, if issued, the injunction would not be adverse to the public interest. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32 (1975); *Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*, 710 F.3d 1202, 1206 (11th Cir. 2013). Our standard of review on appeal is deferential, and we ask only whether the district court abused its discretion. *See, e.g., Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018); *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012). "[W]hile the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent, the standard of appellate review simply is whether the issuance of the injunction in light of the applicable factors constituted an abuse of discretion." *Doran*, 422 U.S. at 931–32. *See also Robinson v. Ala. Att'y Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020) ("Because a preliminary injunction is reviewed under the deferential abuse of discretion standard, the narrow question for us is whether the state has made a strong showing that the district court abused its discretion.") (internal citation omitted). In conducting abuse-of-discretion analysis, legal determinations receive plenary review, but factual findings stand unless they are clearly erroneous. *See, e.g., Ind. Party of Fla. v. Secretary*, 967 F.3d 1277, 1280 (11th Cir. 2020).

Although we can sometimes decide legal issues conclusively in preliminary injunction appeals, *see Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1250 (11th Cir. 2004), the Supreme Court has said that "limited [abuse of discretion] review normally is appropriate." *Thornburg v. Am. Coll. of Obstetricians & Gynecologists*, 476

U.S. 747, 755 (1986). *See also Ashcroft v. A.C.L.U.*, 542 U.S. 656, 666 (2004) (concluding that the district court's determination as to likelihood of success "was not an abuse of discretion"); *Brown v. Chote*, 411 U.S. 452, 457 (1973) ("In reviewing such interlocutory relief, this Court may only consider whether issuance of the injunction constituted an abuse of discretion. . . . In doing so, we intimate no view as to the ultimate merits of appellee's contentions."); *Callaway v. Block*, 763 F.2d 1283, 1287 n.6 (11th Cir. 1985) ("[W]hen an appeal is taken from the grant or denial of a preliminary injunction, the reviewing court will go no further into the merits than is necessary to decide the interlocutory appeal."); *Martinez v. Matthews*, 544 F.2d 1233, 1242–43 (5th Cir. 1976) ("Appellate courts especially must not go beyond a very narrow scope of review, for these preliminary [injunction] decisions necessarily entail very delicate trial balancing.").

We follow the traditional path of limited review in this appeal. We do not decide any of the ADA issues definitively, and ask only whether the district court abused its discretion in concluding that Mr. Reeves was entitled to a preliminary injunction. Importantly, "[t]he application of [the abuse of discretion standard] recognizes the range of possible conclusions the [district court] may reach." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). It "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Id.* (citations and internal quotation marks omitted).

Given the procedural posture of the case and the limited scope of review, we address only the issues raised by the defendants. First, they argue that the district court abused its discretion because it "conflated the question of whether [Mr.] Reeves'[ ] disability was 'open and obvious' with the question of whether his alleged limitations as a result of his alleged disability were 'open and obvious.'" Appellants' Br. at 24. Second, they contend that the district court abused its discretion in finding that Mr. Reeves' need for an accommodation was "open and obvious." *See id.* at 41–51. In this respect, they assert that the district court clearly erred in finding (1) that Mr. Reeves is a qualified individual with a disability, (2) that he was excluded from or denied access to a public benefit, and (3) that his need for an accommodation was "open and obvious." *See id.* at 32–51. Third, the defendants maintain that the equitable preliminary injunction factors weighed against Mr. Reeves rather than in his favor. *See id.* at 51–53.

## A

In a series of cases, the Fifth Circuit has held that, to establish a Title II ADA claim for failure to provide a reasonable accommodation, a plaintiff must show that the entity knew of his disability and its consequential limitations, either because the plaintiff requested an accommodation *or* because the nature of the limitation was open and obvious. *See, e.g., Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020); *Windham v. Harris Cnty.*, 875 F.3d 229, 236–37 (5th Cir. 2017). Relying on *Windham*, the defendants argue that the district court conflated the question of whether Mr.

Reeves' disability was open and obvious with the question of whether the limitations resulting from that disability were open and obvious.

We do not have any published opinions on whether there is an "open and obvious" method for accommodation claims under Title II of the ADA. Assuming without deciding that cases like *Windham* lay out the correct ADA principle, the district court did not conflate Mr. Reeves' disability with the limitations flowing from that disability. It dealt with both issues separately and addressed them over eight pages of its order. *See* D.E. 83 at 27–34. For example, the court discussed numerous notations by ADOC employees in Mr. Reeves' prison file. The employees wrote that Mr. Reeves had "poor communication," was "easily confused," and had "trouble processing information." *Id.* at 30–31. An ADOC counselor also noted that Mr. Reeves reads at "probably 4th [to] 5th grade level." *Id.* at 31. These observations, which are distinct from notations that Mr. Reeves was "slow" and had a "learning disability," set out the limitations that resulted from his disability. They also show that ADOC employees were sufficiently aware of the limitations to note them in Mr. Reeves' file.

The district court touched on both Mr. Reeves' disability and its limitations, and its order demonstrates why it found that the defendants specifically knew of the resulting limitations (as opposed to merely Mr. Reeves' intellectual disability). The court did not clearly err (or otherwise abuse its discretion) in finding that the defendants knew of Mr. Reeves' limitations.

## B

We now turn to the defendants' related argument that the district court clearly erred in finding that Mr. Reeves' need for an accommodation was open and obvious. The district court relied on a case from the Southern District of Georgia, *Arenas v. Georgia Department of Corrections*, No. CV416-320, 2020 WL 1849362 (S.D. Ga. Apr. 13, 2020), for the proposition that absent a request for an ADA accommodation, Mr. Reeves can succeed on his ADA claim only "if his disability, limitations, and need for an accommodation were 'open, obvious, and apparent.'" D.E. 83 at 27 (quoting *Arenas*, 2020 WL 1849362, at *12). As noted, we have never addressed whether Title II of the ADA can be satisfied in an accommodation case by an "open and obvious" disability and its limitations. Because it is not necessary to weigh in on this question definitively to decide this case, we do not opine on it today. Assuming again without deciding that *Arenas* and cases pronouncing similar propositions, *see, e.g., Windham*, 875 F.3d at 236–37, are correct, the district court's findings in Mr. Reeves' case were not clearly erroneous.[6]

The district court based its "open and obvious" determination on numerous pieces of evidence in the record. The court

---

[6] The defendants do not argue that the "open and obvious" method is incorrect under the ADA. They instead assert that the district court made clearly erroneous findings in support of its conclusion that Mr. Reeves' need for an accommodation was open and obvious. So we leave the question of the application of an "open and obvious" method for another day.

looked at all the notations by ADOC staff in Mr. Reeves' prison file, which demonstrated knowledge that Mr. Reeves had difficulties processing information and trouble reading. The defendants argue that these notations were outdated and therefore stale, but "[a] suggestion that . . . evidence is too old goes to its relevance and to its weight," and "[a]ny question as to the weight to be accorded a relevant document is a matter for the [fact finder]." *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992).

In any event, the district court did not consider these notations in isolation. The court also relied on a 2015 inmate request slip which showed that Mr. Reeves had received some paperwork to sign that he did not understand. He wrote in his slip that he "did not know" what the papers were and that he "wanted to have [them] read to [him]." D.E. 27-2.

The defendants say that this document was not an official ADA accommodation request and that it cannot establish that Mr. Reeves had an obvious need for an accommodation. In support of their position, the defendants rely on the testimony of Holman's ADA coordinator. The district court, of course, did not have to accept the testimony of the coordinator. And when asked by the court whether Mr. Reeves' "exact same language" would have been treated as an accommodation request if submitted on an ADA form, the coordinator said "yes." D.E. 78 at 126. Although the court expressly recognized that the slip was not a formal accommodation request, it found that the slip "memorialize[d] [Mr.] Reeves'[ ] verbal request for a reading accommodation which

ADOC staff either ignored or denied." D.E. 83 at 32. The defendants fail to explain why the district court could not have relied on the 2015 request, particularly in combination with the notations by ADOC staff in Mr. Reeves' prison file.

Furthermore, the district court had access to and relied on the memorandum filed by the Commissioner in April of 2018—just two months before the election form was distributed to Holman's death row inmates—in Mr. Reeves' federal habeas proceedings. *See id.* at 33 (citing *Reeves v. Dunn*, No. 1:17-cv-00061-KD-MU, D.E. 25 (S.D. Ala. Apr. 4, 2018)). In his response to the habeas petition, the Commissioner acknowledged the conclusions of several experts that Mr. Reeves "had impaired intellectual functioning and limited reading abilities." *Id.* The Commissioner specifically cited to findings that Mr. Reeves was "functionally illiterate, had an IQ of 71, and could read at only a 3rd grade level." *Id.* (internal quotation marks omitted). The district court was free to rely on these statements by the Commissioner in his memorandum given that both he and Mr. Reeves were parties to the habeas proceeding. *See Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2d Cir. 1994); *United States v. Kattar*, 840 F.2d 118, 130–31 (1st Cir. 1988).

The defendants point to the fact that Mr. Reeves signed numerous medical request forms during his time in prison, and argue that because of these forms ADOC staff could not have known that he "could not read, write, or communicate his needs." D.E. 83 at 29. As the district court noted, however, "many of these forms also include notations that the document was reviewed with [Mr.

Reeves] . . . or that [he] confirm[ed] he had been 'fully informed' about what he was signing." *Id.* at 29 n.14 (citations omitted). Other forms included notations that Mr. Reeves had refused to sign. *See id.* Further still, some forms were unsigned, and others stated that they had been filled out by another person and just signed by Mr. Reeves. *See id.* These documents, then, merely show that the district court could have decided the issue differently. On this record, there is no clear error. *See Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) ("A finding that is plausible in light of the full record—even if another is equally or more so—must govern.") (citation and internal quotation marks omitted); *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

## C

Next, we address the defendants' argument that the district court clearly erred in determining that Mr. Reeves is a qualified individual with a disability under the ADA. According to the defendants, Mr. Reeves "failed to prove that he suffers from an intellectual or cognitive disability sufficient to render him unable to make the nitrogen hypoxia election in June 2018." Appellants' Br. at 32.

The defendants contend that the error was the district court's alleged failure to explicitly mention evidence that they presented. But the fact that the district court did not expressly discuss all of their evidence in its order is not problematic. It is well-settled that a court is not required to exhaustively discuss every piece of

evidence or every argument presented by a party. "We do not insist that trial courts make factual findings directly addressing each issue that a litigant raises, but instead adhere to the proposition that findings should be construed liberally and found to be in consonance with the judgment, so long as that judgment is supported by evidence in the record." *United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004) (en banc) (citation and internal quotation marks omitted). *See also United States v. Tinker*, 14 F.4th 1234, 1241 (11th Cir. 2021) (stating that, despite the defendant's assertions, the district court was not required to address all mitigating evidence or every argument as to mitigation).

In their brief, the defendants detail the contrary evidence they presented to the district court. Again, this evidence shows only that the district court could have made a different finding. *See Anderson*, 470 U.S. at 573 (explaining that the clear error standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently"). Clear error requires much more than a different, plausible finding to compel reversal. On this record, the district court did not clearly err in finding that Mr. Reeves was a qualified individual under the ADA.

## D

The defendants also challenge the district court's determination that Mr. Reeves was excluded from or denied access to a public benefit. The defendants argue that this finding was clearly

erroneous because Mr. Reeves failed to produce evidence that he lacked meaningful access to that benefit.[7]

According to the defendants, because Ala. Code § 15-18-82.1 gave inmates 30 days during which to elect nitrogen hypoxia and did not require the use of any particular form, Mr. Reeves cannot show that their failure to accommodate him prevented him from receiving the benefit of making the election. More particularly, they argue that they provided the form at the end of the election period and that the form was not the only writing by which Mr. Reeves could have made the election. They also note that Mr. Reeves had counsel throughout the statutory election period, and nothing prevented him from understanding that he should discuss the election decision with his attorneys.

Though the defendants may be correct that they did not have a statutory obligation to provide death row inmates with any election form, once they undertook to do so they were required to comply with the ADA. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) (although the ADA does not require States

---

[7] In a single, conclusory sentence in the merits portion of their brief the defendants say that the district court clearly erred in finding that the ADOC provided a service subject to the ADA by voluntarily deciding to distribute the election form to Holman's death row inmates. *See* Appellants' Br. at 37. This sentence, unsupported by any legal argument whatsoever, is insufficient to present the issue for our review. *See, e.g., Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (explaining that appellants abandon an issue when they make only "passing references" to it in the argument section of their brief).

to "provide a certain level of benefits to individuals with disabilities[,] . . . States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide") (citation omitted). The district court relied on this established principle, and the defendants have not provided any persuasive argument why that constituted error.

The defendants also contend that the district court clearly erred in relying on Dr. Fahey's opinions "to find that [Mr.] Reeves'[ ] cognitive disability rendered him unable to understand the form" because there was contradictory evidence. *See* Appellants' Br. at 38. We disagree. Dr. Fahey testified that Mr. Reeves' reading comprehension level was at least ten grade levels below that required to understand the election form that the defendants provided. The defendants did not present expert testimony or other evidence that directly contradicted Dr. Fahey's testimony. As a result, they cannot show clear error.

E

Finally, the district court did not abuse its discretion in concluding that the equities in this case weighed in favor of Mr. Reeves. During the preliminary injunction proceedings, counsel for the defendants represented that the nitrogen hypoxia protocol would be "completely ready to go" within "the first three or four months of [2022]." D.E. 78 at 219. Weighing "this arguably short delay against the irreparable harm to [Mr.] Reeves if he is forced to face execution by a method he so greatly fears—and one he would not have chosen absent the ADOC's alleged ADA violation," the

district court determined that the equities favored Mr. Reeves. *See* D.E. 83 at 36.

There is no reversible error.  Notably, this is not a case where a defendant has asked a district court to enjoin a state from executing him altogether, regardless of the method of execution. Mr. Reeves requested only that the court prevent the ADOC from executing him by any method other than the one he would have chosen but for the defendants' alleged violation of the ADA, pending resolution of his ADA claim.

It is also worth pointing out that the Alabama Legislature agreed on nitrogen hypoxia as a permissible method of execution in June of 2018.  Three and a half years later, Alabama has yet to develop, let alone implement, a protocol for this method of execution.  Any delay, then, in executing Mr. Reeves and any other death row inmate who elected nitrogen hypoxia is at this point attributable to Alabama.  This fact certainly weighs against the defendants, and even if the issue is close the district court did not abuse its discretion in finding that the equitable preliminary injunction factors favored Mr. Reeves. *Cf. Doran*, 422 U.S. at 932 ("While we regard the issue as a close one, we believe that the issuance of a preliminary injunction . . . was not an abuse of the District Court's discretion.").

## IV

Given the record in this case, the district court did not abuse its discretion in granting Mr. Reeves' motion for a preliminary

22-10064          Opinion of the Court          29

injunction.  We therefore affirm the district court's order and deny the defendants' motion for a stay.

**AFFIRMED.**